EDISON ELECTRIC LIGHT CO. et al. v. MT. MORRIS ELECTRIC LIGHT CO. et al.

SAME v. UNITED ELECTRIC LIGHT & POWER CO.

(Circuit Court, S. D. New York. September 19, 1893.)

1. PATENTS FOR INVENTIONS—INFRINGEMENT—LACHES—INJUNCTION.
   The test case involving the validity of the Edison patent for incandescent electric lamps (No. 223,898) was brought in May, 1885, and prosecuted with all due diligence. After its determination the present suit was begun against defendant corporations which were not organized until a year or two after the commencement of the test suit, and did not begin active operations in incandescent lighting until three years after

that date. *Held,* that plaintiffs had not been guilty of such unreasonable delay or laches in commencing suit as to deprive them of the right to a preliminary injunction.

**2.** SAME—MANUFACTURERS OF INFRINGING ARTICLE—USERS.

Corporations organized during the pendency of the test suit involving the validity of the Edison patent for incandescent electric lamps, whose sole business is the furnishing of electric light to others, and who use infringing lamps for the purpose of competing in that business with the licensee of the patentee, are to be regarded rather as manufacturers than as mere users, who are entitled to protection because they have supplied themselves with electric lighting plants before the decisions of the courts sustaining the patent, and at a time when judicial decisions in foreign countries were in conflict.

**3.** SAME—EQUITIES—COMPETING CORPORATIONS.

On a motion for a preliminary injunction in a suit for infringing the Edison patent for incandescent electric lamps, defendants claimed that they were mere users, who installed plants prior to the decision establishing the validity of the patent, and were misled by the obscurity of the patent, and the conflict of foreign decisions, into investing large sums of money in their plants, and asked that complainants be compelled to supply lamps on reasonable terms, on the ground that otherwise defendants' plants would be rendered valueless. The business of defendants was the furnishing of incandescent electric lighting to consumers. *Held,* that the equities of defendants were not superior to those of the patentees, who had engaged in a similar business relying on the patent, and had strenuously attempted to enforce their rights by suit, and ultimately succeeded, and that a preliminary injunction should issue, especially in view of the fact that defendants had failed to show that they could not obtain incandescent lamps which did not infringe the patent.

In Equity. Bills by the Edison Electric Light Company and the Edison Illuminating Company of New York against the Mt. Morris Electric Light Company and others and the United Electric Light & Power Company to enjoin the defendants from infringing letters patent No. 223,898, issued to Thomas A. Edison, for incandescent electric lamps. On motion for a preliminary injunction. Granted.

Dyer & Seely and Eaton & Lewis, (R. N. Dyer, Eugene H. Lewis, and C. E. Mitchell, of counsel,) for complainants.

Cravath & Houston, (Paul D. Cravath and B. H. Bristow, of counsel,) for defendants.

Before WALLACE and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. This is an application for a preliminary injunction to restrain the use by defendants of incandescent electric lamps which are infringements of letters patent No. 223,898, issued to Thomas A. Edison January 27, 1880. The first-named complainant is the owner of the patent, the second is the sole and exclusive licensee of the right to use and vend incandescent electric lamps under such patent in and for the city of New York, for that portion of said city lying below Seventieth street, and it seems not to be disputed that the lamps used by defendants are so used within that portion of the city. Prior litigation touching this patent has been of such a character that the application now under consideration may be looked upon as made rather at the close of the case than at its beginning. The validity of the pat-

ent, and the question whether or not lamps of the kind used by defendants are infringements thereof, has been decided, after most protracted and exhaustive trial and argument, by the circuit court in this district, and by the circuit court of appeals. Validity and infringement, therefore, are not disputed here.

The right of the owner of a patent to fix arbitrarily the terms on which he will allow others to use it, or to wholly refuse assent to such use, was considered by this court in Campbell Printing-Press, etc., Co. v. Manhattan Ry. Co., 49 Fed. Rep. 930, where it was held that there was no warrant for the proposition that, if he so refused, the monoply which the statute gives him might be destroyed by order of the court, and the right to use the invention sold to any one who wished to purchase it, on terms to be fixed by the court. That a patentee may dispose of his invention, or hold it to his sole use, as he chooses, see, also, Rob. Pat. § 31, and cases cited.

Although the owner of a patent may not thus, without assent on his part, be deprived of his monopoly, he may, of course, so conduct himself as to be no longer entitled to the aid of a court of equity in maintaining it. And it is insisted, as a ground for refusing the injunction prayed for, that complainants' delay in instituting and prosecuting suits to prevent infringement has been such that the court should refuse them that relief, as against these defendants, who, during the period intermediate the granting of the patent and the decision of this court sustaining its validity, invested large sums of money in the belief that such patent could not be sustained, or would not be construed so as to cover the lamps defendants used. It is not denied that defendants knew there was a patent, which the owners insisted was a valid one, and which they claimed covered incandescent electric lights, such as defendants use.

This defense of laches or delay on the part of the owners of the patent was urged upon the court of appeals at very great length, upon most voluminous evidence, in Edison Electric Light Co. v. United States Electric Lighting Co., 3 C. C. A. 83, 52 Fed. Rep. 300; and that court decided that no case was shown to authorize the refusal of an injunction on any theory of laches or equitable estoppel, by reason of undue delay in bringing suit, or acquiescence in known infringement. Subsequently, the same point was urged upon the same court, again at great length, in Edison Electric Light Co. v. Sawyer-Man Electric Co., 3 C. C. A. 605, 53 Fed. Rep. 592, and the same opinion expressed. The facts presented here do not change the situation, so far as the complainants are concerned. The same measure of delay is shown, and the same excuse for that delay is also shown. Twice has the court of appeals held that the original test suit (that against the United States Electric Lighting Company) was timely begun, and pressed with proper diligence. It has also held that, such suit proceeding with due diligence, no other infringers of the patent can be heard to complain, with reason, that separate suit was not brought against them. Further discussion of the same facts in this court

is unnecessary, and out of place. The situation is not changed by the circumstance that these are different infringers, with a different history from that of the defendants in the earlier suits. No doubt, in determining whether, in any particular case, there has been such delay or laches as will affect a party's right to the aid of a court of equity, there are always two things to be considered, —the delay of the one party, and the effect of that delay upon the other; and, where a person has unreasonably delayed taking some particular action, that delay is sometimes not charged against him, where it is shown it operated in no way to the other's prejudice. Where, however, the court holds that there has been no unreasonable delay, but due diligence shown by the one party, I am not aware of any authorities which support the contention that he must be denied relief because he was not quite diligent enough to prevent the other party from making investments which have proved improvident. As the circuit court of appeals has held that other infringers cannot complain because only one test suit, —that against the United States Company—was brought, and has further twice held that that suit was prosecuted with due diligence, and as the defendants here were not even organized till a year or two after the institution of that suit, in May, 1885, and did not begin active operations in incandescent lighting till three years after that date, there seems to be nothing left for this court to decide on that branch of the case.

Irrespective, however, of any question of laches on the part of complainants or of the owners of the patent, there was a claim to consideration advanced to the court of appeals in the Sawyer-Man Case, supra, growing out of the obscurity of the patent, and the fact that, prior to the decision of the federal court (in this circuit) sustaining and construing it, there were conflicting decisions upon it in foreign countries. Commenting upon this, that court recognized three classes of infringers, and referred to them as follows:

"Every one of the manufacturing corporations, the competitors of the Edison companies, commenced their operations with a knowledge of the existence of the patent in suit. They were controlled by business men of intelligence and experience. Their promoters and managers may have believed, and probably did, that the patent could not be successfully maintained. But they entered upon the business with an understanding of its risks, and of the consequences which would befall them as infringers, if the patent should be sustained. None of them can now be justly heard to say that an injunction which is essential, if not indispensable, to the protection of the owners of the patent and the licensees, ought not to be granted because of the great pecuniary loss which may result. If, in consequence of being deprived of the use of the lamps, their investments in other electrical apparatus will be greatly depreciated, they must take the consequences." (2) "The users who have supplied themselves with electric lighting plants from the infringers, which required for their operation lamps of the patent, are of course infringers. But those who did so before the decision of the circuit court sustaining the patent, and at a time when judicial decisions in foreign countries interpreting the patent were in conflict, and who are now willing to accept their lamps from the complainants upon reasonable terms, have much stronger equities than the manufacturing infringers. These equities the court will not disregard. But what would be reasonable terms, if an application were made to the court

on behalf of these users, is a question which can only be determined in each case upon its particular circumstances." (3) "Those users, however, who have acquired these plants subsequent to the decision of the circuit court, if they are deprived of the use of the lamps, and as a consequence the value of their plants may be greatly impaired, must accept the result as a consequence of their own imprudence."

The defendants insist that they are within the second of these categories, and entitled to the consideration which that court intimated would be extended to persons so situated. I do not so understand the opinion of the court of appeals. It is only the users of the lamp for the purpose of availing of its light who seem to fall within the terms or reason of the exception,—the unskilled public, who, with no knowledge of electricity, of patents, or of controversies and litigation as to inventions, bought something which they found on sale in the open market. The defendants, whose sole business is the furnishing of electric light to others; who use the lamps for the purpose of competing in that business with the complainant the illuminating company, continually adding to the number of their customers and enlarging their plants, and using the very lamps they ask complainants to supply to them in such way that even new consumers, who would otherwise purchase their illumination from the holders and licensees of the patent, may be induced to purchase it from defendants, to the latters' gain and the complainants' loss,—are more properly within the first category. Still, the language used by the court of appeals is perhaps not so positive as fairly to preclude discussion as to its meaning, and this motion may best be disposed of by conceding defendants' contention that they are to be considered as users, who installed plants prior to the decision establishing the validity of the patent. And they protest that they are willing to accept their lamps from the complainants upon reasonable terms. All that the court of appeals determined, as to such defendants, was that they had much stronger equities than manufacturing infringers, and that the court would not disregard those equities. But that court wisely left each case to be determined when it came up, "upon its own particular circumstances." In the case at bar, however, there are conflicting equities. On the one side are the defendants, who, misled by the obscurity of the patent and the conflict of foreign decision, invested large sums of money, supposing the patent would, in some way or other, be so disposed of that it would not interfere with their business. On the other side, there is, not only the owner of the patent, but the Edison Illuminating Company, which has relied upon the letters patent, believing that the Edison invention was, as it claimed to be, a most important advance in the art of incandescent electric lighting, and confiding in the validity of the grant by which the United States undertook to secure to that inventor, his assignees and licensees, a monopoly of his valuable discovery. Trusting that the patent and the law would, to the extent of its license, relieve it from competition in such mode of lighting as could only be practiced by the use of the particular lamp that patent covered, it also invested large sums of money, not only in the purchase of an exclu-

sive license, but also in the construction and equipment of electric lighting plants in which the lamp was an essential feature. And for years it has been compelled to conduct its business in the face, not only of competition with other systems using other lamps, which was to be expected, but also with infringers who have made and sold and used the very lamp which the letters patent and the contract of license made the exclusive property of their licensor and themselves. When, therefore, complainants ask that, for the few remaining years of that patent, infringement of it shall be stopped by the court, they certainly show equities which are as much entitled to consideration as are those submitted by the defendants. Both sides have been confident of success. Both have made large investments. Each is exposed to serious pecuniary loss, whichever way the court decides. And, where the equities are thus balanced, it seems the duty of the court to so decide in favor of those who hold the legal title to the property, and to whose protection, in the language of the circuit court of appeals, "an injunction is essential, if not indispensable."

The defendants' case, moreover, is not as fully stated as it should be, upon a point of much importance. The affidavits of the complainants assert that the peculiar lamp of this patent is indispensable to any successful system of electric lighting. This is a familiar assertion in this court, but the measure of credit to be given to it is problematical. That other incandescent lamps, which are not infringements of the integral vacuum chamber carbon-filament lamp of Edison would also give light, has been repeatedly asserted; and in the Sawyer-Man Case, which was referred to on the argument and in the notice of motion, that assertion was fortified with strong affidavits. Upon this point the defendants' papers are significantly silent. While it was suggested in argument that without the lamp covered by the patent their plants were valueless, and that injunction against the use of such lamps would practically destroy their entire investment, the defendants' affidavits do not support such contention. It is not shown what efforts they have made to supply themselves with lamps not infringements of the Edison. It is not shown that no other lamp will serve their purpose, perhaps not so efficiently, perhaps at greater cost to themselves, but yet sufficiently to enable them still to use their existing plants to furnish light to their customers. If this be the case, if injunction will leave them, even during the life of the patent, still competitors of the complainant the illuminating company, although competitors whose lamps may not be so good, and who may find it more expensive to supply and operate them,—in other words, competitors under the conditions which were to be expected with such a patent in existence,— it would be difficult to see where they have any equities at all. Where the defendants' main contention is that injunction will utterly destroy their investments, and force them out of the business of incandescent lighting altogether, they should support that contention by proof.

The motion for preliminary injunction is therefore granted; order to be settled on notice, when suggestions as to suspension for a reasonable time to adapt fixtures to receive new lamps will be entertained. As at present advised, I am not inclined to enjoin the use of infringing lamps now in situ.