### TIMOLAT v. MANNING et al.

(Circuit Court, S. D. New York. July 11, 1901.)

PATENTS—INFRINGEMENT—PORTABLE DRILLING MACHINES.

> The Moffet patent, No. 369,120, for a portable drilling machine, in which steam or compressed air is substituted for hand power in drilling holes in metallic structures, was not anticipated, covers an invention of great merit, and is entitled to a liberal construction. As so construed, *held* infringed.

In Equity. Suit for infringement of patent. On final hearing.

William Houston Kenyon and William C. Witter, for complainant.
Samuel T. Fisher, for defendants.

COXE, District Judge. This suit is founded upon letters patent, No. 369,120, granted to John Moffet, August 30, 1887, for a portable drilling machine, which substitutes steam or compressed air for hand power in drilling holes in metallic structures. The specification states that prior to the invention the holes for bolts and rivets which it was necessary to make, after the heavy steel and iron parts were placed in position, were bored by the ordinary ratchet-drill manipulated by the hand of the artisan. This was a tedious and fatiguing process. The object of the invention is to furnish the operator with a portable drill adapted to all the positions in which it may be necessary to bore holes, the power being

furnished by a rotary engine operated by steam or compressed air. The engine is attached to the same frame that carries the boring shaft. The three claims are as follows:

"(1) In a portable boring-machine, the combination of the boring-spindle with a rotary engine, upon the cylinder of which is formed the journal-bearing for the boring-spindle, as set forth. (2) In a portable boring-machine, the combination of the boring-spindle, the rotary engine, with its cylinder, upon which is formed the journal-bearing for the boring-spindle, the gear connecting the boring-spindle and engine-shaft, and the feed-screw and sleeve-nut adapted to turn and force forward the boring-tool, as set forth. (3) In a portable boring-machine, the cylinder provided with diametric tubular connections, as set forth, in combination with the handles attached to said connections, as and for the purpose specified."

The defenses are lack of patentability, anticipation and aggregation. It is also insisted that the claims must be limited to the specific construction shown in the patent, and, if so limited, the defendants do not infringe.

There is no doubt that the device covered by the claims is an ingenious and highly useful tool. No time need be spent in discussing this proposition; it is self-evident and conceded. The tool is here; it is an actual verity. The all important question is whether Moffet or some one else is entitled to the credit of having invented it. That the inventor of a device so valuable is entitled to a large meed of praise cannot be disputed. The application was filed December 24, 1886, but the invention was conceived several years prior to this date. The complainant insists that it was over three years before; the defendant admits that it was over two years before. In September, 1883, Moffet filed an application for a patent for a rotary engine, and he testifies that prior to this date his portable drilling machine was in actual operation at the Cornell Works, but was not sufficiently perfected to warrant the filing of an application for a patent. There was not sufficient power and the speed of the machine was not satisfactory. All of the parts as they now appear were assembled at that time, namely, the engine, spindle, drill-shaft, gearing, screw, feed nut and handles. There were two handles situated on opposite sides of the engine used for holding the drill and for the inlet and exhaust for the steam or air. Moffet's statement is corroborated by two witnesses and by written evidence; it is inherently probable and it is uncontradicted. The date of the invention, then, is found to be prior to September 27, 1883. The best reference offered by the defendant's is unquestionably the patent granted to John F. Allen, October 14, 1884, for a portable drilling machine. The application was filed December 3, 1883, and there is no satisfactory testimony establishing the date of the construction of the Allen machine prior to the date of the application. It is argued that the Allen drill was prematurely patented, that he never constructed an operative machine until long afterwards, and that all his work, until after even the latest date which can be found for the Moffet invention, must be regarded in the light of unsuccessful experiments. It is, however, unnecessary, in the view the court takes of the conception of the Moffet invention, to consider this phase of the controversy. It is not pretended that the Allen pat-

ent anticipates or limits the distinctive invention covered by the third claim of the patent in suit. Next to Allen come Fullam, of July 30, 1867, Noteman, of February 27, 1883, Whitcomb, of November 1, 1881, and Jones & Wild, of December 22, 1881. It is unnecessary to discuss these patents in detail, because none anticipates, and, combined, they do not materially limit the claims in issue. The Fullam drill employs a reciprocating engine and a fly wheel, and it is not portable in the sense that the Moffet drill is portable. It is clamped to the plate which is to be drilled, and has not the thrust, the alignment, the stability, the journal bearing or the handles of the Moffet drill. The Noteman device is supported by a strap around the neck of the operator and is intended to drive an ordinary auger or screw driver. It uses a rotary engine, and this is the one point of marked resemblance between the two structures. No rational mechanic would think of using Noteman's breast auger for heavy metal boring, nor would it suggest to his mind the essentially different tool of Moffet. The Whitcomb and Jones & Wild devices are power drills used in mining. What has been already said applies with even greater force to these. Mechanical skill alone could not convert these rock borers into a successful tool for metal boring. In short, the court is convinced that Moffet was the first to construct a successful portable power drill for heavy boring. His drill seems to meet all the demands of the situation; it is capable of boring holes from over two inches in diameter down to those of the smallest size; it is easily carried about, comparatively simple in construction; not prohibitive in price, and does ten times the work of the hand drills previously employed. This result was brought about after years of patient endeavor, during which time money and brain work were freely given to the task. Moffet's contribution to the art is one of unusual value. But for him machinists, working on the great steel structures of the present day, might be using the old hand drills and making one rivet hole where they now make ten. One who has done so much, who has actually contributed something which helps on the world's work, should not be treated as if he were attempting to burglarize the storehouse of invention.

It is admitted as to claims 1 and 2 that, if they are not narrowed by limiting them to the specific structure shown in the patent, the defendants' machine infringes. As to claim 3 infringement is denied because, as argued by the defendants, their machine does not have diametric tubular connections in combination with handles attached to said connections. The elements of the first claim are First. A boring spindle. Second. A rotary engine. Third. The journal bearing for the spindle formed upon the cylinder of the engine, all in combination in a portable boring machine. The second claim is the same as the first with the following additional elements: First. The gear connecting the boring spindle and engine shaft. Second. The feed screw and the nut sleeve, so that the entire device is carried forward and not alone the boring tool. The third claim is for the following elements: First. The engine cylinder, provided with diametric tubular connections. Second. Handles attached to said

connections, all in combination in a portable boring machine. It is manifest that a portable boring machine for drilling holes in metal, operated by steam or compressed air, and possessing the other elements as above stated, will infringe these claims. There is nothing in the prior art which compels their restriction to the precise form of mechanism shown, and unless they are so limited the defendants cannot escape liability.

The third claim is intended to cover, as a special feature, the inlet and exhaust pipes, with handles attached thereto, located diametrically opposite each other on the cylinder, so that the strains, shocks and vibrations can be balanced, equalized and instantly felt by the operator. Of this arrangement the description says:

"In order that the machine may be handled, if necessary, while in a heated condition, wooden handles d d' are attached to the tubular connections a a' upon each side. Those handles, being near the center of gravity of the machine, furnish a ready and convenient means for its transportation to the different positions in which its services may be deeded."

It is true that in the drawing solid wooden handles are shown as attached to the inlet and outlet pipes, so that no air or steam can pass through the handles proper as in the defendants' borer. But the location, form and material of the handles are not of the essence of the invention, so long as they are attached to the connections in such a manner as to enable the tool, in the hands of the workman, to perform all the functions above mentioned. It is not difficult to imagine a dozen different forms of handle which might be attached to the pipes in as many different ways and still secure all these advantages. It is thought that infringement cannot be avoided, by obvious changes which might be varied indefinitely to suit the fancy of the operator. The object of the handles is to enable him to grasp the pipes with ease and comfort, and if he can do this to better advantage by letting the steam enter and escape through the handles, protecting his hands by heavy gloves, as shown in one of the illustrations of defendants' tool, he is at liberty to do so, but he does not change the character of the drill by so doing. The extremely technical definition suggested in the record and in defendants' brief of the word "diametric" is not warranted by the ordinary meaning of the word, or by anything in the patent itself. The defendants' pipes are screwed into the cylinder at points diametrically opposite each other. This is enough. The complainant is entitled to a decree.