TIMOLAT et al. v. FRANKLIN BOILER WORKS CO.

(Circuit Court of Appeals, Second Circuit. March 23, 1903.)

No. 124.

1. PATENTS—SUIT FOR INFRINGEMENT—LACHES.

The owner of a patent is not chargeable with laches because of a delay of three years before commencing suit against a particular infringer, where during all of such time he was litigating with other infringers.

2. SAME—INFRINGEMENT—PORTABLE DRILLING MACHINES.

The Moffet patent, No. 369,120, for a portable drilling machine, claim 2, *held* not anticipated, valid, and infringed, on appeal from an order granting a preliminary injunction.

Appeal from the Circuit Court of the United States for the Northern District of New York.

This cause comes here upon appeal from an order granting injunction pendente lite against the infringement of United States letters patent No. 369,120, August 20, 1887, to John Moffet for "portable drilling machine." The patent contains four claims. The order covers all of them.

E. H. Fairbanks and Hector T. Fenton, for appellant.

John R. Bennett, for appellees.

Before WALLACE and LACOMBE, Circuit Judges.

LACOMBE, Circuit Judge. In July, 1901, at final hearing upon pleadings and proofs, the Circuit Court, Southern District of New York, sustained the first three claims of the patent in the suit of Timolat v. Manning, 110 Fed. 206 (which was begun July, 1899), and found them to be infringed by the device then before the court. Subsequently, in November, 1901, suit was brought against another infringer upon a different device, and a preliminary injunction was therein granted by the same judge who heard the Manning Case, no opinion being written. Appeal was taken in that case, but abandoned by defendant May 1, 1902. The present suit was begun the next month, and the order appealed from entered July 15, 1902.

The appellant contends that some laches of the complainant should require a denial of injunctive relief. Upon the above statement of facts this contention is plainly without merit. Defendant did not put its tool on the market until the spring or summer of 1899. Within a month or so thereafter complainants began litigation with infringers, and has continued to litigate ever since. They were under no obligation to sue every one at the same time. American Grapho-

¶ 1. See Patents, vol. 38, Cent. Dig. §§ 468, 561.

phone Co. v. National Gramophone Co. (C. C.) 90 Fed. 824; Edison Co. v. Mt. Morris Light Co. (C. C.) 57 Fed. 644.

The main reliance of appellant is on certain items of proof which were not before the court in the Manning Case, and it will greatly simplify the discussion of the questions raised upon this appeal if we confine our attention to the second claim only. By so doing, and thus modifying the order appealed from as to the other three claims, we are not to be taken as intimating any opinion as to whether or not the new evidence affects the validity or construction of those claims otherwise than to raise doubts which should preclude a decision upon affidavits alone. A sufficiently comprehensive order may be based on the second claim, and the others may be considered at final hearing.

The specification states that in the erection of nearly all metallic structures—such as vessels and bridges—many of the holes intended for the reception of bolts and rivets must be bored after the parts to be connected are placed in position. This has commonly been accomplished by the use of a suitable clamping device applied to the parts in which the hole was to be bored, and boring the same by the means of the ordinary ratchet-drill manipulated by the hand of the artisan, which is a very slow and fatiguing process. The specification proceeds:

"The object of my invention is, therefore, to furnish the workmen employed upon such metallic structures with a boring apparatus that shall be adapted to all the various positions in which it may be desired to bore holes in such structures, that may be readily detached from one place and applied in another, and that has for its motive power a rotary engine operated by steam or compressed air, said engine being attached to the same frame that carries the boring-spindle, and being removable from place to place with it; and the invention consists in the construction and combination of parts by which the engine is connected with the boring-shaft and by which it operates the same, as hereinafter fully set forth."

Referring to the drawings, and to the fact that the inventor had already taken out a patent for a suitable engine, it is stated that "a rotary engine of somewhat different construction might be employed if it had the necessary requisites of being lightly constructed and of efficiency." It is stated that the engine cylinder is provided at diametrically opposite points, with tubular connections receiving the pipe, through which steam or compressed air is brought to the engine by means of a flexible pipe connecting with a steam boiler or compressed air receiver, as either one or the other is used to propel the engine. A pipe attached to the connection, a', forms the exhaust through which the air or steam, after expending its energy upon the engine piston, escapes. The specification proceeds:

"Upon the under side of the cylinder is formed a projection, preferably integral therewith. This projection forms a sleeve or long journal-bearing, in which the boring-spindle, F, is carried. This spindle is provided at one end with a suitable socket to receive a drill or other boring tool, and has firmly secured to its opposite end the gear-wheel, c, which engages the pinions, c'. keyed upon the projecting end of the engine-shaft, e. As the wheel, c, is much larger than the pinion upon the engine-shaft, it follows that the revolutions of the latter will be greatly in excess of those of the boring-spindle, and that there will be a consequent increase of power in the latter, with a corresponding decrease of speed, thus enabling a very small swiftly-running

engine to furnish all the power needed for operating the drill, without increasing the weight of the machine to such an extent as to render it unwieldy."

The evidence indicates that, if the boring-spindle were run at the high speed of the engine, it would be absolutely destructive of the drill point. A feed-screw and a sleeve-nut, which need not be more particularly described, are next referred to; also a cover for the gears, and wooden handles for the tubular connections. Examination of the patent indicates that it covers a structure in which the engine cylinder and the bearing of the boring-spindle are integral with each other, in which, therefore, the motor (engine) which causes the rotation is necessarily transported from place to place with the boring-spindle, in which the entire device can be readily handled by the artisan, in which the gearing between the rotating shaft of the motor and the boring-spindle is so arranged as to reduce speed and increase power. The combination of parts above described are all adapted to produce those results. The journal for the spindle, as shown in the drawings, is longitudinally parallel with the cylinder, and is described as "upon the under side of the cylinder," but there is nothing to indicate that by occupying such a location rather than some other one any useful purpose would be subserved, so long, at least, as the journal is integral with the cylinder, and in such relation to it as to admit of the gearing described. So, too, the description reads, "This projection forms a sleeve or long journal-bearing," but there is nothing to indicate that the mere length of the bearing is of any moment, provided only it be long enough efficiently to hold the boring-spindle.

The second claim is as follows:

"(2) In a portable boring-machine, the combination of the boring-spindle, the rotary engine, with its cylinder, upon which is formed the journal-bearing for the boring-spindle, the gear connecting the boring-spindle and engine-shaft, and the feed-screw and sleeve-nut adapted to turn and force forward the boring tool, as set forth."

In the suit of Timolat v. Manning there seems to have been a comprehensive inquiry into the state of the art; prior patents are referred to, including some for a portable drilling machine; and the conclusion reached that "none anticipates, and, combined, they do not materially limit, the claims in issue." The court found that:

"Moffet was the first to construct a successful portable power drill for heavy boring. His drill seems to meet all the demands of the situation. It is capable of boring holes from over two inches in diameter down to those of the smallest size. It is easily carried about, comparatively simple in construction, not prohibitive in price, and does ten times the work of the hand drills previously employed. The result was brought about after years of patient endeavor, during which time, money and brainwork were freely given to the task. * * * But for Moffet's contribution to the art, machinists working on the great steel structures of the present day might be using the old hand drills, and making one rivet hole where they now make ten."

There is nothing in the record here presented which controverts this finding that the device of the patent was the first successful portable drill for heavy boring. Whatever combinations may be disclosed in the patents here first introduced, we are without any

evidence to show that they were practicable, or that any effort, even, was made to embody them in working structures.

The new evidence relied on, as stated in the supplemental brief of appellant, consists of the file wrapper and contents and the "Higginson and Mead English patents and the Straub and Leach American patents." From the file wrapper and contents it appears that no change whatever was made in the specification. It remains as originally filed. The second claim originally read:

"(2) In a portable boring-machine, the combination of the engine cylinder, the boring-spindle, the gear connecting the boring-spindle and engine-shaft, the feed-screw and sleeve-nut adapted to turn and force forward the boring tool, as set forth."

This was rejected by the examiner on Fullam, No. 67,284, July 30, 1867, and Allan, No. 297, January 26, 1875 (English), both for drilling machines. The Allan (English) patent is not in this record. The Fullam patent was considered in the Manning Case, and was thus characterized:

"It employs a reciprocating engine and a fly wheel, and is not portable in the sense that the Moffet drill is portable. It is clamped to the plate which is to be drilled, and has not the thrust, the alignment, the stability, the journal-bearing, or the handles of the Moffet drill."

Moreover, it lacks the feature described in the Moffet specification of a journal-bearing for the rotary spindle formed upon the cylinder of the engine, thus securing a degree of compactness (and consequent portability) which the Fullam device does not possess. When this feature, already indicated in the specification, was made a part of the claim by erasing "engine cylinder" and substituting therefor "boring-spindle, the rotary engine with its cylinder, upon which is formed the journal-bearing for," so as to make the claim read as given supra, it was at once allowed. Certainly, there is nothing in this transaction to impose limitations on the second claim beyond such as are expressed in the language found therein.

The Higginson (English) patent is not found in the record. Two figures are said by an expert to be taken from that patent. Certainly, they look very unlike the Moffet device. There is no projection, integral or otherwise, upon the cylinder, to serve as a journal-bearing for the boring-spindle, and no gear connection between the engine-shaft and the boring-spindle. Neither does the Mead (English) patent appear anywhere in the record. The expert produces a drawing, which he says is taken from that patent, but there is not a single word of description quoted therefrom. The criticism which complainant makes on this drawing seems well-founded: "It does not show a portable drilling machine in the sense of the Moffet patent. It does not even show a self-contained drill; simply an ordinary drilling tool operated by exterior power transmitted to it through a driving rope, shafting, and gearing. Not only is the power derived from an exterior source, but between it and the drill there is no mechanical operation, and the only connection, even in the broadest sense, is through the endless driving rope which transmits the power from the one to the other."

The United States patent to Straub, No. 154,569 of 1874, is for a dental hand tool, although it is stated in the specification that it may be suitable for driving a drill, router, or other cutting tool, or for brushing, cleaning, or polishing about steam engines or locomotives. The device consists "in the combination in a suitable case, A, of a rotary shaft, B, and wheel, C, driven by compressed air, steam, or other elastic fluid in motion, applied through a tube, D, in communication with the motive power." There is no combination between a rotary engine and rotating spindle by means of gearing which reduces speed and increases power. The rotating spindle is merely an extension of the shaft of the wheel, and revolves at the same rate of speed.

The United States patent to Leach, No. 244,629 of 1881, for a portable steam augur, has the same points of difference. The rotating toolholder is but an extension of the axle or shaft of one of the motor wheels, and rotates at the same rate of speed. In none of these patents do we find anything which would require a modification of the construction given in the Manning suit to the patent and to this second claim; certainly nothing which would persuade the court to restrict that claim to a journal-bearing which "shall be longitudinally parallel with the cylinder, and necessarily at one side thereof," nor to a journal-bearing of any particular length if only it be long enough to prove efficient.

It is inferred from the brief that, if the claim be not thus restricted, infringement is not denied. The defendant's device is a portable boring machine. In it is found a rotary engine contained in an engine cylinder, with pinions upon the end of the engine-shaft, which shaft projects beyond the cylinder. To the end of the cylinder where this shaft projects there is firmly fastened a projection in the shape of a hollow cone, truncated near the apex. The metal of the cone is so arranged that through the smaller end there is formed a journal-bearing sufficiently long to efficiently accommodate a shaft which passes through the truncated portion. Into the outer end of this shaft a boring tool is fixed. The inner end projects into the hollow conical projection which is integral with the engine cylinder. It terminates in a ring-like head, which, by a combination of pins, gear wheels, and pinions, is connected with the pinions on the engine-shaft in such relation as to reduce speed and increase power. There is a feed-screw and sleeve-nut adapted to turn and force forward the boring tool. Every element of the claim is found in defendant's structure.

The order for preliminary injunction is affirmed as to the second claim only, and reversed as to the first, third, and fourth claims.