TIMOLAT et al. v. PHILADELPHIA PNEUMATIC TOOL CO.

(Circuit Court, S. D. New York.  April 30, 1904.)

**1. PATENTS—ANTICIPATION—UNSUCCESSFUL DEVICES.**

A patent for an improvement or manufacture which does not accomplish the objects and purpose of its conception and is impracticable does not anticipate a later patent upon a similar device capable of successful operation, unless the objections to the device of the prior patent relate merely to details of construction, or where it can be converted into a successful device by a mechanic of ordinary skill.

**2. SAME—PRIOR USE—BURDEN OF PROOF.**

A defendant has the burden to establish an alleged prior use to defeat a patent by proofs clear, satisfactory, and beyond reasonable doubt.

**3. SAME—INFRINGEMENT—PORTABLE DRILLING MACHINE.**

The Moffet patent, No. 369,120, for a portable drilling machine having a rotary engine operated by steam or compressed air, was not anticipated, and is entitled to a liberal construction; the machine described being the first successful portable power drill for heavy metal boring.  Claims 1 and 2 also *held* infringed.

In Equity.  Suit for infringement of letters patent No. 369,120, for a portable drilling machine, granted to John Moffet August 30, 1887. On final hearing.

Hillary C. Messimer (John R. Bennett, of counsel), for complainants.

D. Frank Lloyd (E. Hayward Fairbanks and Hector T. Fenton, of counsel), for defendant.

HAZEL, District Judge.  This is a bill in equity to recover damages for infringement of United States letters patent issued to John Moffet, No. 369,120, granted August 30, 1887, and to restrain infringement of claims 1 and 2 of said patent, of which complainant Timolat is the assignee, and the complainant corporation sole licensee.  The patent is for a portable drilling machine.  Its motive power is a rotary engine operated by steam or compressed air, compactly united and inclosed in a light cylindrical case, adapted to be used by the hand of the operator. The specification calling attention to the manner in which holes were formerly bored in metal parts connected and placed in position says:

"This has commonly been accomplished by the use of a suitable clamping device applied to the parts in which the hole was to be bored, and boring the same by the means of the ordinary ratchet-drill manipulated by the hand of the artisan, which is a very slow and fatiguing process."

The object of the invention is to supply the workman with a portable drill, with motive power, having a boring device suitably adapted for being changed from place to place as the operator desires.  The engine is attached to the frame which carries the boring spindle and other parts connected with the boring device.  Claims 1 and 2 only are involved.  They read as follows:

"(1) In a portable boring machine, the combination of the boring spindle with a rotary engine, upon the cylinder of which is formed the journal bearing for the boring spindle, as set forth.

"(2) In a portable boring machine, the combination of the boring spindle,

¶ 1. See Patents, vol. 38, Cent. Dig. § 73.

the rotary engine, with its cylinder, upon which is formed the journal bearing for the boring spindle, the gear connecting the boring spindle and engine shaft, and the feed screw and sleeve nut adapted to turn and force forward the boring tool, as set forth."

Claim 1 is for a combination of elements, namely, a rotary engine and boring spindle, and the journal bearing formed upon the cylinder of the engine. Claim 2 has all the elements of claim 1, and, in addition thereto, includes gearing between the engine shaft and the shank of the boring spindle and a force screw and sleeve nut. The answer denies the novelty and utility of the Moffet patent; avers prior knowledge and use by others, anticipation by earlier patents and prior publications, and noninfringement. The Moffet patent is apparently well known to the Circuit Courts and Circuit Court of Appeals in this circuit, for it has been considered in one aspect or another at least five times at final hearing and on motions for injunctions pendente lite. A summary of the litigation in which this patent has been involved follows: At final hearing, Timolat v. Manning (C. C.) 110 Fed. 206. On motion for temporary injunction, Timolat v. Fairbanks; no opinion written. On motion for temporary injunction, Timolat et al. v. Franklin Boiler Works Co.; no opinion reported. On appeal from order granting temporary injunction, Timolat v. Franklin Co., 58 C. C. A. 405, 122 Fed. 69. Motion for preliminary injunction in the case at bar, 118 Fed. 852. Motion to dissolve injunction, Id., 123 Fed. 899. In the Manning Case, Judge Coxe, in his comprehensive opinion, after considering the Allen, No. 306,375, dated October 14, 1884, Fullman, No. 67,284, dated July 30, 1867, Noteman, No. 273,136, dated February 27, 1883, Whitcomb, No. 249,130, dated November 1, 1881, and Jones & Wild, dated December 22, 1881, patents, which were claimed by the defendant to anticipate the patent in suit, accorded to the inventor great credit for having been the first to conceive a highly meritorious and successful portable power drill for heavy boring. He also concluded from the evidence in that case that the patentee reduced the drilling device to practice several years prior to the date of the application, which was filed December 24, 1886, and accordingly decided that the date of the invention was before September 27, 1883. In the Franklin Boiler Works Co. Case, the Circuit Court of Appeals, after considering the patents before Judge Coxe, the Higginson and Mead English patents, and the Sharpneck and Leach (first) American patents, modified the injunction pendente lite granted by Judge Coxe as to claims 1, 3, and 4 of the patent, and continued the injunction as to claim 2. The reason for the modification, as announced by the court, was owing to proof of certain devices not before the Circuit Court in the Manning Case. The Court of Appeals gave no intimation as to the force and effect of such new evidence upon the validity or construction of said claim, "otherwise than to raise doubts which should preclude a decision upon affidavits alone." Such, then, was the practical status of the patent in suit, as declared at final hearing by the Circuit Court, and substantially as qualified on appeal in the Franklin Boiler Case, at the time this suit was instituted. In explanation of a vigorous defense in the case at bar and a voluminous record, it is contended that new evidence is disclosed, strongly supported by prior patents, showing indisputably that

the Moffet drill, the successful practicability of which is controverted, in all its essential elements is anticipated, and that, in connection with the file wrapper now before the court, it is proven that the patent was irregularly and illegally granted. It is asserted that the trained experts of the Patent Office were remiss in their duties when the application was filed, in that they failed to unearth or bring out of concealment the patents of Allen, Leach (first and second), and of Sharpneck. This additional evidence, it is claimed, would, beyond doubt, at least have resulted in limiting, if not anticipating, the scope of the Moffet patent at the initial hearing. It is further stated in argument that the Circuit Court was not correctly advised by the slender record of 56 pages in the Manning Case as to the state of the art, and hence a broader construction was vouchsafed the patent than it was entitled to receive. It is further insisted that the defense in that case was asserted with insufficient vigor and assiduity, and therefore it is thought such defense was farcical and not asserted in good faith. Attention is called to the evidence in the Manning Case upon which the Moffet invention was antedated. Upon that point it is now claimed that the proofs clearly establish that Moffet's first rotary engine patent, granted in 1883, was incapable of practical operation, and no successful rotary drill was perfected until a short time prior to December 4, 1886, the date of the patent in suit. The defense relies upon the alleged conflicting statements found in the cross-examination of complainant's witness Moffet to show that the earlier date of the invention of the Moffet patent was a mistake of fact, and that the first satisfactory rotary drilling machine was not completed until shortly before the date of filing the application in suit. On his direct examination the witness testifies that he completed the drill in the latter part of 1883. He was unable to state the exact date, but, producing a letter dated April 25, 1883, relating to a rotary engine for which he desired to secure a patent, testified that he was positive that he completed a drill prior to the receipt of the letter. Other correspondence in evidence, dated February 9 and February 16, 1885, relating to the purchase for Moffet of portable rotary drills suitable for boring one-inch holes, would seem to strongly support the earlier date of invention. Moreover, the witness Bollstetter is positive that perfected portable rotary drills invented by Moffet were used in the factory where Moffet and himself were employed in July, 1883. The evidence of Bollstetter, then a youth 14 years of age, is positive, direct, and unequivocal, and, as to the period of time when he first saw a perfected Moffet drill, is satisfactorily corroborated. It may well be that the first machine of this character which he had seen made a lasting impression upon his memory. As such evidence is uncontroverted, I am unable to see any reason why it should be disregarded, and I therefore concur in the conclusion heretofore reached in the Manning Case, that the invention was completed some time prior to September 27, 1883. Stress is placed upon the Moffet file wrapper to show that claim 2 was limited in the Patent Office when the application was under consideration. The requirements of the Patent Office that claim 2, as originally filed, be amended by the patentee to include the element "the rotary engine, with its cylinder, upon which is formed the journal bearing for the boring spindle," cannot be construed as a limitation

thereof. The object of the amendment obviously was to emphasize the self-evident fact "that the entire cylinder does not itself form the spindle bearing." The specification and drawings remove any suggestion of ambiguity by declaring that the engine and boring spindle shall be supported by a frame, which signifies nothing less than a cylinder frame, within which the small parts of the engine and the boring spindle are so connected as to transmit power to the boring shaft. The proofs are convincing that the above elements in combination embody the gist of the invention, without which the device would be incapable of successful operation. The intermediate actuating gearing arrangement between the boring spindle and the rotary engine enables the engine shaft to revolve more rapidly than the boring spindle, and accordingly an essentially slower velocity is imparted to the drill. This secures practical and successful boring in heavy metal work. Giving consideration, therefore, to the manifest intent of the Commissioner of Patents and of the inventor, which may be fairly presumed from the context of the specification and correspondence, it is not shown that a narrower claim was substituted. Nor are the claims of the patent limited to the details of construction. Hence the means adopted for journaling the boring spindle on a projection at the side of the cylinder, and integral therewith, are thought to be unimportant.

A description of the constructions, as found in the specification, follows:

"C is the engine cylinder. * * * This cylinder, C, is provided at diametrically opposite points with the tubular connections, a. * * * Upon the underside of the cylinder, C, is a projection, E, preferably integral therewith. This projection forms a sleeve or long journal bearing, in which the boring spindle, F, is carried. This spindle is provided at one end with a suitable socket to receive a drill or other boring tool, d, and has firmly secured to its opposite ends the gear wheel, c, which engages with the pinions, c, keyed upon the projecting end of the engine shaft, e. As the wheel, c, is much larger than the pinion upon the engine shaft, it follows that the revolutions of the latter will be greatly in excess of those of the boring spindle, and that there will be a consequent increase of power in the latter, with a corresponding decrease of speed, thus enabling a very small swiftly running engine to furnish all the power needed for operating the drill, without increasing the weight of the machine to such an extent as to render it unwieldy.

"Firmly secured to one end of the cylinder, C, is a frame, G, having an opening which receives the gear wheel, c, and an additional opening, in which the collar, h, upon the inner end of the feed screw, s, is placed. This feed screw is thus attached and extends outwardly from the frame, G, and is received into the sleeve nut, n, which is provided at its outer extremity with a pivoted joint, n, upon which it turns when revolved by the handles, o, or other suitable means. The point, n, has a bearing in the upright of the clamping frame, B, and forms the point of resistance for the drill in its forward motion."

It is perfectly true that nearly all the elements of the combination, taken separately, are old. The art of drilling metal was familiar when the patent was conceived. There were different ways and means in which such holes in metals were bored; the dimensions of the metal, and size of the holes desired, controlling the means employed. A breast drill was ordinarily used, and a jackscrew or brace as a force feed was very common. These earlier devices, imperfect in view of later improvements, could not accomplish the objects and purposes of the invention in suit. According to the defendant, the combination of ele-

ments is not new, by which a metal power drill or spindle is arranged in a rigid parallel alignment with the engine shaft, and supplied with means to produce a close union by the journaling of the boring spindle upon the engine cylinder. The proofs, however, do not sustain the antiquity of such a combination in a drilling device. The principle of decrease of speed resulting from the employment of larger gearing wheels is not new, but its application to a drill of this description accomplished a new result, and is therefore patentable. To assume lack of novelty in the Moffet patent, or to limit its claims, requires a conclusion by this court that the power drilling tools described in the patents of Allen, Fullam, Noteman, Whitcomb, Jones & Wild, Leach (first and second), Sharpneck, and Higginson were capable of successfully carrying out the objects and purposes of the Moffet patent. The evidence does not warrant such a conclusion. It is well established that a patent for an improvement or manufacture which does not accomplish the objects and purpose of its conception, and is impracticable, does not anticipate a later patent upon a similar device, capable of successful operation, unless the objections to the prior patent relate merely to details of construction, or where an ordinarily skilled mechanic may convert an impractical or unsuccessful device into a practical success. Pickering v. McCullough, 104 U. S. 310, 26 L. Ed. 749; New Departure Bell Co. v. Bevin Bros. Mfg. Co., 73 Fed. 469, 19 C. C. A. 534; E. M. Miller Co. v. Meriden Bronze Co. (C. C.) 80 Fed. 523. It may be that the patents cited in anticipation were not unpractical in the sense that they were paper patents, or entirely lacked utility and operativeness. Some of them doubtless were capable of successfully working in a circumscribed field, and if any of them disclosed a drill of the Moffet invention, such disclosure would unquestionably anticipate the patent in suit. The record, however, shows Moffet to have been the first person who described or made known to the world a portable power drill for heavy boring, namely, boring two-inch holes in iron. For work of this character hand ratchet drills were used, which were slow, costly, and inefficient. In the patents now for the first time urged in anticipation, it is stated in the specification that the drill is useful both for boring wood or metal. An important distinction is thought to exist between drills of this character. Moffet's object, as has been stated, was to adapt a power drill to bore holes in metal parts used in the erection of iron buildings, vessels, and bridges, which was movable without inconvenience from one position to another. To successfully carry out this object, it was necessary to arrange the engine gearing, boring spindle, and force feed in such a way as to secure a direct thrust directly in line with the drill, and at a certain rate of speed. The desired velocity of the boring spindle could be obtained only by adapting a journal bearing for the spindle connected in alignment with the engine shaft regulated by the rotating gearing. This is the essence of the invention, and, beyond doubt, entitles the complainant to a differentiation from the prior art. As to the references previously before the Circuit Court and Circuit Court of Appeals in the cases mentioned, no convincing new evidence being presented by the record, the construction adopted and differentiations could well be followed. Neither the Allen, Leach (first and second), Higginson (English), nor Sharpneck

patents embody the combination of the patent in suit. They are each functionally unlike the Moffet invention. The Sharpneck patent is for a rock drill, and, though removable from one position to another by the operator, has no journal or boring spindle. The drill is inserted in the socket of the engine shaft, and rotates with the shaft at the same velocity as the engine. Clearly it lacks the elements of claims 1 and 2. The Higginson patent has no actuating gearing arrangement between boring spindle and rotary engine, and accordingly, in my judgment, is unable to achieve the results attained by the complainants' drill. The reference to Leach was thought by Judge Coxe, in the Franklin Boiler Works Co. Case, to approach more nearly the Moffet device than the others, except the patent of Noteman. The court remarked that the alleged patent presented nothing new. The Circuit Court of Appeals, in speaking of the earlier Leach patent, said that the rotating spindle was merely an extension of the wheel, and revolved at the same rate of speed. In the opinion of Judge Lacombe, who granted the temporary injunction in the present case, it is stated that the Leach patent (second), considered by itself, does not indicate that the earlier decisions would have been different, had it appeared in the records. The Leach patent (second) describes a portable steam auger. It has two shafts; one, a, extending longitudinally through the engine cylinder at the lower end; and the other, e, which has a socket to the shaft on the auger or drill. Both shafts are provided with adjustable gears. The specification states substantially that by this arrangement, and by changing the pinions or gears upon the shaft or countershaft, the operator is enabled to increase or diminish the rotating speed of his auger shaft without altering the speed of the engine. Defendant's testimony tends to show that this construction, if it be construed in accordance with complainants' combination, is similar in appearance to that of Moffet, and has the precise elements of claim 1. The Noteman construction is practically similar to the Leach (second), and yet, after a careful examination of that patent, the Circuit Court reached the conclusion in the Manning Case that it was impractical for heavy metal boring. Again, it must be admitted that the drawings of Leach do not disclose the feature upon which complainants' expert witness Waterman lays great stress, namely, the line of thrust in actual alignment with the drill tool. I am not satisfied by the evidence of the practical operativeness of the alleged construction. It is incapable of boring large holes in heavy metals. Apparently the object of the invention was to construct a boring device for both wood and metal. I have not overlooked the testimony of defendant's witness Keller, to the effect that he had constructed a drill in accordance with the drawing of the Leach patent, and that it is capable of successful operation for metal boring and reaming. The model exhibit, modified in an important particular, is produced, showing a feed screw located in alignment with the drill. The Leach (second) patent undoubtedly closely approaches the Moffet structure. I am not satisfied, however, by the proofs, that it is so near as to anticipate it. The Allen patent has a boring spindle connected with the rotary engine cylinder in such a way as to form a bearing for the spindle and gearing, which, in operation, tends to increase the revolutions of the engine, and to decrease the speed of

the spindle.   In the Manning Case, the court, speaking of this patent, said:

"The best reference offered by the defendants is unquestionably the patent granted to John F. Allen, October 14, 1884, for a portable drilling machine. The application was filed December 3, 1883, and there is no satisfactory testimony establishing the date of the construction of the Allen machine prior to the date of the application."

This brings me to a consideration of the defendant's asserted new evidence to establish the prior use of the Allen device.   It is attempted to be shown that in the autumn of 1882 and in the spring of 1883, prior to the date to which the patent in suit was antedated, Allen built and successfully operated a portable drill embodying the combination of claims 1 and 2.   An identical construction is not produced.   A model made according to the Allen patent by Mr. Keller, patentee of the infringing drill, as an exhibit, is in evidence.   The invention of Allen does not appear to have gone into general use.   I have carefully read the testimony upon which it is claimed that the date of the Allen construction is prior to the date of the application.   I am not favorably impressed by the testimony of Allen upon this point.   Considered in connection with his former testimony and the testimony of his father in the Manning Case, it has not the weight claimed for it.   A witness who has had ample opportunity to narrate his connection with a transaction, and apparently fully relates the same, and thereafter, in another litigation, gives a different narrative in relation thereto, or one from which an entirely different inference may be drawn, is not usually to be depended upon for accuracy of statement.   The testimony of such a witness should be carefully scrutinized before it is accepted as true. Even where it is uncontradicted, it should not be accepted if there are reasonable grounds for believing that it is unreliable or mistaken.   It may be that the testimony of Allen does not come within the range of testimony which is thus characterized and described by the courts.   Certainly the testimony of one who concededly withheld material and important testimony upon a former trial ought to be convincingly supported by other satisfactory evidence before such testimony first offered at a later trial involving the same issue is accepted.   The rule in such case imposes upon the defendant the burden of proving the earlier device, and also to establish prior use and invention by proofs clear, satisfactory, and beyond a reasonable doubt.   Barbed Wire Patent, 143 U. S. 284, 12 Sup. Ct. 443, 36 L. Ed. 154.   In the Manning Case, defendant's exhibit No. 7 was called to the attention of the witness Allen, and, in reply to questions put to him, he said that the drill was made in his father's shop, but he could not tell positively when it was made. Upon this subject the following is a portion of his examination:

"Q. I call your attention to defendants' Exhibit No. 7, Allen rotary drill. Do you recognize this exhibit?   A. I do.   *   *   *   Q. State, if you know, when drills of the same type were made?   A. I know positively that drills of that type were made in the latter part of December, 1885.   Q. How do you fix this date?   A. I fix the date by the timebook.   Q. Please examine said timebook, and read the entries referring to this or similar drills?   A. 'Monday, 28th, three rotary drills; Tuesday, 29th, ten rotary drills; Wednesday, 30th, five rotary; Thursday, 31st, two and one-half rotary.' That ended that book. I have not got any of the books which followed that.   Q. How do you fix the

year in which these entries were made? A. By the date in front of the time-book, '1885.'"

The witness gave other testimony giving reasons for knowing the month and the year in which the entries were made in the timebook. In respect to this subject he further testified on cross-examination as follows:

"Q. You are not able to say just when the rest of the work on that drill was done? A. Some of it was done in January, 1886. Q. But just when the last work was done on that drill you are unable to say, are you? A. I am not able to say just when. Q. What has become of the timebook which would show that? A. I don't know what has become of it. I have tried to find it, but can't. It is lost, as far as I know. Q. Has this timebook been in your possession from the date of the entries to the present time? A. Yes; at the works."

John F. Allen, the inventor of the Allen drill, and father of the preceding witness, was also called as a witness in the Manning Case, and these questions were put to him.

"Q. State whether or not you ever made a drill constructed in accordance with said patent? A. Yes. Q. When? A. I made at least two in 1883."

He was asked to give a brief general history of what he did in the manufacture of drilling machines up to 1888. Nowhere in his testimony is found an intimation that the drill described in the patent was completed prior to the date of application, or that it was in prior public use. It further appears in this case from the testimony of Mr. Allen, son of the patentee, that rotary drills were made in 1882 and 1883 in his father's factory, and the dates thereof, as heretofore stated, are again fixed by timebooks which were then used. Though by such timebooks it appears that work on rotary engines for drills was done during the period stated, it nevertheless is not entirely clear that such labor was performed upon a portable drilling machine. The record in the Manning Case and the interrogatories and replies above mentioned show that both the witness and the patentee had in that case full and free opportunity to state the facts with reference to an earlier period of invention than that stated in the patent. No claim was then made by any one that a perfected portable drilling machine was completed in the year 1882, early in 1883, or prior thereto. It is true that other evidence is found in the record tending to corroborate the earlier conception of the Allen invention and its practical usefulness. Such evidence, however, is based wholly upon the unaided recollections of the witnesses. It does not conform to the strict rule that evidence to carry back the date of the invention shall be clear, satisfactory, and beyond a reasonable doubt. My conclusion is that the involved claims are entitled to the breadth of scope and construction heretofore given them in the Manning Case, and substantially concurred in by the Circuit Court of Appeals in the Franklin Boiler Works Co. Case. Claims 1 and 2 are not limited to the specific structure shown in the patent. The journal bearing in the defendant's drill extends beneath the engine cylinder; being attached to the cylinder, and operated identically with the Moffet journal bearing, which, as has been stated, projects from the side of the cylinder, and is integral therewith. In both devices under consideration, the boring spindle is united with the engine shaft by gearing, practically the same. The defendant also uses a feed screw

and sleeve nut, which appears as a force feed for the drill in infringement of claim 2. The latter element, as has been said, is old and familiarly known, yet when it is used in combination with other elements in complainant's device, which are new and perform a new function, then such combination of elements is entitled to the protection of the patent laws.

Let a decree be drawn in the usual form, sustaining the claims of the patent and directing an accounting.