### In re REEVES.
### Patent Appeal No. 3286.

Court of Customs and Patent Appeals.
June 12, 1934.

Edgar J. Clarkson, of Washington, D. C. (Charles E. Riordon and C. Russell Riordon, both of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

All the claims of appellant's application for a patent relating to the production of composite motion picture films were rejected by the Primary Examiner of the United States Patent Office, which rejection was affirmed by the Board of Appeals. From the decision of the Board of Appeals, appellant has appealed to this court.

Claims 12 and 14 are illustrative and follow:

"12. In apparatus for producing motion pictures of real objects combined with a picture projected on a screen, an opaque reflecting screen, a motion picture projector for displaying scenes thereon positioned in front of the screen and to one side thereof, a motion picture camera positioned in front of the screen to photograph the scenes as displayed on the screen and real objects or persons between the screen and camera, said real objects being positioned between the camera and the path of the rays from the projector, the position of the projector being such that the path of the light rays therefrom passes to the screen uninterrupted by the real objects or persons."

"14. Mechanism for producing motion picture films comprising real objects, said mechanism including an opaque reflecting screen, a motion picture projector adapted to display motion pictures on said screen, a motion picture camera adapted to photograph the scenes on the screen as displayed and real objects intermediate the camera and screen and out of the path of the light rays passing from the projector to the screen, said camera and projector being synchronized and both being in front of the plane of the screen with the projector spaced from the camera at such distance that rays from the projector will pass to the screen without interruption."

The references relied upon are:
Dawley, 1,278,117, September 10, 1918.
Brainerd, 1,307,846, June 24, 1919.
Schufftan, 1,601,886, October 5, 1926.
Lisatz and Geyling (French), 616,966, February 11, 1927.

Appellant's application discloses a method and means of producing composite motion picture films by using a motion picture projector to project a picture upon a screen, the projector being placed at one side and not directly in front of the screen. Then a motion picture camera takes a composite picture which consists of the picture on the screen, and other objects, moving or still, which are between the screen and the camera. The objects which are interposed between the screen, containing the picture, and the camera are illuminated by spot lights. The camera and the projector are synchronized so that their shutters will function in unison.

The appeal here involves claims 12, 13, 14, 15, and 16. The examiner rejected claims 12 to 15 as unpatentable over Brainerd, in view of Geyling. Claims 13 and 14 were further rejected as unpatentable over Brainerd and Geyling in view of Schufftan. Claim 16 was rejected upon Brainerd, in view of Geyling, for the same reasons as those assigned in rejecting claims 12 to 15, and in addition the examiner pointed out that claim 16 includes means for illuminating the real objects without casting shadows on the screen. The examiner held that this method of illumination was commonly used in making composite pictures and that it was entirely obvious to anyone familiar with that form of motion picture production. The examiner also pointed out that Geyling shows light sources arranged so as to illuminate the actors without causing shadows on the screen. Claims 12 to 16 were further rejected by the examiner as unpatentable over Geyling in view of Schufftan. The examiner pointed out that Schufftan shows that it is old to photograph combined projected pictures and real objects by synchronizing a camera with the projector, and that no invention would be involved in employing the apparatus of Schufftan to photograph the combined pictures and real objects of Geyling as only an expected result would be obtained. The examiner also rejected claims 12 to 15 as being unpatentable over Brainerd alone. These claims are distinguished from the reference by the position of the projector with relation to the screen. The examiner stated that this fact was not inventive since "anyone skilled in the art would at once realize that the real

objects in Brainerd's device would interfere with the projected image," and that "it would be equally obvious that this defect could be eliminated by projecting the pictures from one side of the screen." Claims 12 to 15 were further rejected by the examiner as unpatentable over Dawley, in view of Schufftan. Claim 16 was further rejected by the examiner as unpatentable over Dawley in view of Geyling. Geyling, according to the examiner, shows the lighting system claimed.

After the rejection by the examiner and appeal to the board, affidavits of those skilled in the art were submitted by appellant for the purpose of explaining the references and for the purpose of showing that appellant's method had been proven to be successful and those of the prior art unsuccessful. The Board of Appeals remanded the application to the Primary Examiner under rule 139 for reconsideration and for a report to the board as to his conclusions thereon. The examiner reported that the additional matter filed by the applicant had no bearing on the appeal and in no way affected the patentability of the claims.

The Board of Appeals did not discuss each claim or the references in such detail as did the examiner, but its conclusions are in substantial accord with those of the examiner, and after pointing out the various disclosures in the references the board said: " * * * It seems to us that the changes involved in the claims over what is taught by the French patent do not involve invention, especially in view of Schufftan."

The patent to Dawley is for making motion pictures with a camera which photographs simultaneously a scene projected on a screen and real objects or persons on the stage back of the screen. The screen upon which the photographs are projected is obviously transparent and is referred to in Dawley's specification as a sheet of plate glass.

The Brainerd patent relates to a method of producing motion pictures by the use of an opaque reflecting projection screen in front of which, side by side, is a motion picture camera and a motion picture projector. Both are operated in synchronism and real objects are placed on the stage between the camera and the screen.

Schufftan takes photographic and cinematographic pictures by the use of a camera and a projector which operate in synchronized relation and a mirror is used in projecting the picture on the screen. This patent clearly shows the synchronized relation between the projector and the camera.

The French patent to Lisatz and Geyling, No. 616,966, referred to by the examiner as "Geyling" and by the board as "the French patent," relates to improvements made in scenic projections. Upon a screen a scenic background is projected from cameras placed above and either in front of or behind the screen and real objects may appear in front of the background where they are viewed. The patent states that: "The invention consists in disposing the projecting apparatus, for the background of the scene, at such a height either behind or in front of the said background that in the first case the lens (objective) of the apparatus can not be perceived from the seats of the spectators, that in the second case the luminous cone projected by this apparatus will encounter neither the lamps nor the studio screens and that in both cases this cone will strike the base of the background at quite an acute angle so that persons can approach the said background without finding themselves in the projection cone."

It is not denied that appellant has combined certain features shown in the cited prior art. Appellant claims, however, that what he has done, irrespective of what others have done, amounts to a success and is a practicable, workable, and useful method, in which method there is invention. It is not contended by the Patent Office tribunals nor by the Solicitor for the Patent Office that appellant's method, as a whole, is taught in any single reference or that the method of appellant lacks in practicability and usefulness. It is the view of the board that no invention was involved. The only question in the case is: Did the changes made by appellant from the prior art require invention or were they the result of the application of mere mechanical skill?

Appellant has cited and quoted from a great many decisions relating to the combination of old parts and old elements, including Edison Electric Light Co. v. Novelty Incandescent Light Co. (C. C. A.) 167 F. 977; and In re Coffield, 50 App. D. C. 259, 270 F. 695. Appellant also urges that it is shown that the prior art devices are impracticable and incapable of successful operation. It is therefore contended, under Timolat v. Philadelphia Pneumatic Tool Co. (C. C.) 131 F. 257, and other decisions, that a patent for an improvement or manufacture, which does not accomplish the objects and purposes of its conception and is impracticable, does not anticipate a later patent upon a similar device capable of successful operation.

On this subject it was the view of the board that whatever modifications of the prior art appellant had made, which makes his method a success, even if the prior art methods were unsuccessful, were the result of mechanical skill only. We are constrained to agree with this conclusion. Certainly we are not convinced that the board, in affirming the action of the examiner, was clearly in error. It seems to us that to one skilled in the art, the defects in the method of the prior art would be obvious, and that means to be employed to correct the defects would occur to any one skilled in the art without the application of the inventive faculty.

The decision of the Board of Appeals is affirmed.

Affirmed.

HATFIELD, Associate Judge, did not participate.