### SOCIETE ANONYME USINE J. CLERET v. REHFUSS et al.

#### SAME v. SELIG et al.

(Circuit Court, E. D. Pennsylvania. July 3, 1896.)

1. PATENTS—VALIDITY AND INFRINGEMENT—PEARL-BUTTON MACHINE.

The invention of the Cléret patent, No. 450,057, for an apparatus for cutting pearl buttons, consists essentially in the application to the old button lathe (whether in the form of a movable chuck and stationary tool holder, or movable tool holder and stationary chuck) of an automatic

sharpening device, arranged as described in relation to the oblique cutting tool. The invention is of a primary character, and the patentee is entitled to a liberal application of the doctrine of equivalents.

2. SAME—INFRINGEMENT—REVERSING ARRANGEMENT OF PARTS.

Merely reversing the order of the mechanism described and claimed in the patent, without any change in the principle of operation, or in the result, will not avoid infringement, where the patent is of a primary character, and entitled to a liberal application of the doctrine of equivalents.

3. SAME—INTERPRETATION OF CLAIMS—ESTOPPEL.

The use of an unsound and unsuccessful argument by the inventor's solicitor with respect to a rejected claim will not have the effect of imposing a destructive limitation upon the claims allowed.

Anthony Pollok and Philip Mauro, for complainant.

Wm. C. Strawbridge and J. Bonsall Taylor, for defendants.

ACHESON, Circuit Judge. The bill of complaint in each of these two cases charges the respective defendants with infringement of letters patent No. 450,057, granted on April 7, 1891, to Jules Cléret, for an apparatus for cutting pearl buttons. Prior to this invention, pearl buttons had ordinarily been cut by means of a rotating chuck or holder to grasp the circular blank or disk of pearl, and a cutting tool in the hands of the operator, or by means of a button lathe consisting of a chuck for holding the button blank, and a cutting tool mounted in a tool holder. The results, however, were not satisfactory, either in respect to the amount of the product, the quality of the work, or the economy and facility of manufacture. In operating with edged tools upon pearl, the extreme hardness of the material speedily dulls the edge, and constant resharpening of the tool is necessary. This occasioned much delay, when the old methods of cutting pearl buttons were pursued. Moreover, the employment of highly-skilled workmen to keep the tools properly sharpened was required. These difficulties were obviated by Cléret's invention, which consists in the successful application of an automatic sharpening device to existing pearl-button lathes. In such lathes it is necessary that there should be a movement of approach and separation between the cutter and the chuck, in order to insert the blank into the chuck, and to remove therefrom the button; and in practice either the chuck was movable, and the tool holder was stationary, or the organization was reversed. The two arrangements, however, are equivalent, and, at the date of Cléret's invention, were known interchangeable substitutes for each other. As described and illustrated in his specification and drawings, Cléret shows his invention as applied to that type of button lathes in which the tool holder is stationary, and the chuck is moved to and from the cutting tool. The specification of this patent, after a brief reference to a concurrent application in which the difficulties that had interfered with the manufacture of pearl buttons by automatic machinery was explained, proceeds thus:

The button-blank to be operated upon is introduced into the chuck jaws, a, which are advanced by a carriage, b. This part of the mechanism is or may be identical in construction with that set forth in the application above referred to, and therefore need not be here described. It forms no part of the present invention, which relates to the construction of the cutting mechanism,

and to the means for sharpening the cutting tool without removing the same from the machine, or interrupting the operation thereof.

The described cutting tool is a long and thin piece of steel, shaped to correspond with the form to be given to the button, and adapted to be advanced as fast as the edge is worn off by use and by sharpening. It is supported in the holder obliquely with reference to the axis of the chuck, in which position it offers greater resistance, and cuts to greater advantage, than if supported horizontally, as is customary. The sharpening is effected horizontally, or in the plane of the axis of the chuck, or a plane parallel therewith, so that the cutting edge will always present a sharp angle with reference to the plane of inclination of the tool. The described sharpening device is supported above the cutting tool. It consists of a wheel of emery, or other suitable material, carried by an arbor which has bearings in the frame of the machine, so that it can move vertically. The arbor carries fast and loose pulleys. A lever pivoted to the frame serves to depress the grinding wheel and bring it into action. On releasing the lever a coiled spring throws the sharpening wheel out of action, and the parts return to their normal positions. During the movement of depression the driving belt, which is upon the loose pulley, slips onto the fast pulley by the simple displacement of the shaft. Thus the sharpening wheel is started in operation automatically. The reverse motion of the arbor transfers the belt from the fast to the loose pulley, and the wheel ceases to revolve. The sharpening of the tool takes but an instant, and practically causes no interruption in the cutting operation. Thus production is vastly increased, unskilled operators can be employed to run the machine, and the cost of production is reduced to a minimum.

The first and second claims of the patent, infringement of which is here charged, are as follows:

(1) The combination, with the chuck and its movable carrier, of a stationary tool holder, adapted to support a cutting tool at an oblique angle with the axis of said chuck, and provided with means for adjusting the tool; a sharpening device or wheel movable towards and away from said tool holder, so as to sharpen the tool without displacement thereof, and operating means for said sharpener,—substantially as described.

(2) The combination of the stationary tool holder for supporting a cutting tool obliquely, a chuck mounted on a carrier movable horizontally towards and away from said tool holder, and a sharpening wheel supported above said tool holder, and movable vertically, substantially as described.

That these claims cover valid combinations, and not aggregations, is very clear to me. The several constituents co-operate in respect to the work to be done, each is essential to the complete organization, and the result is both new and highly useful.

The evidence quite justifies the conclusion that Cléret was the first to devise and put into successful operation a practical and efficient automatic sharpening button lathe. The only instance of such a device to be found in the prior art, as disclosed by this record, is the machine of Ernest May, for which letters patent No. 312,140, dated February 10, 1885, were granted. The May apparatus, however, although capable of producing buttons, was fatally defective as a practical machine. On the other hand, Cléret's machine has proved to be

a marked success, and a great public benefit.    His invention, in my judgment, is one of conspicuous merit, and is of a primary character.

The defendants' machine has all the elements of the first and second claims of the patent in suit, combined and operating substantially in the manner shown by Cléret, and producing the same result as his machine.    The only difference is that, whereas in the Cléret machine the tool holder is stationary, and the chuck is movable to and from the cutting tool, in the defendants' machine the chuck is stationary, and the tool holder is movable to and from the chuck.    The defendants have simply reversed the order of the patent, without any change in the principle of operation or in the result; but, in the eye of the patent law, these two forms are substantially the same thing, and a claim for one includes the other, as its manifest equivalent. Winans v. Denmead, 15 How. 330, 342; Machine Co. v. Murphy, 13 O. G. 366, 97 U. S. 120.    As we have seen, these two forms were known interchangeable substitutes for each other, in the organization of button lathes, at the time of Cléret's invention.    Now, in this circuit it has been authoritatively decided that a mere transposition or reversal of parts is not a material departure from a patented invention, and will not avoid a charge of infringement.    Devlin v. Paynter, 69 O. G. 1365, 12 C. C. A. 188, and 64 Fed. 398.

But it is contended that, with respect to the matter of a movable chuck and stationary tool holder, the proceedings in the patent office upon Cléret's application exclude the owner of the patent from the benefit of the doctrine of equivalents.    If there be such an estoppel, it must be inferential, for nothing like an express disclaimer is discernible.    Let us see whether there is any just ground for an implication so unreasonable.    Surely the patent office could not have intended to impose such a limitation upon the claims as a condition of their allowance; for from the start the examiner insisted that there was "no invention in moving the work instead of the cutter," and this position was consistently maintained by the patent office officials.    Then, again, the specification, as we have seen from the above quotation, speaking of "the chuck-jaws, a, which are advanced by a carriage, b," explicitly states that this part of the mechanism "forms no part of the present invention, which relates to the construction of the cutting mechanism, and to the means for sharpening the cutting tool without removing the same from the machine, or interrupting the operation thereof."    These features are thus declared to be the substance of the invention.    The specification gives no importance at all to what the defendants insist is of the very essence of the allowed claims.    True, the examiner rejected the principal claims as originally framed by the applicant, and changes therein followed; but from the correspondence it is plain that neither side proceeded on the idea that there was any patentable distinction between a machine organized so that the material is moved to a stationary working tool, and a machine having the reverse arrangement.    The applicant, indeed, sought the allowance of a claim for "the combination with the button-holding chuck supported on a movable carrier of a cutting tool supported in its holder at an oblique angle with the axis of said chuck, and means for adjusting the tool

longitudinally"; and in urging this claim (which, it will be noted, did not include as an element the sharpening device) the applicant's solicitors, in answer to a reference to May's patent, did insist that "May has neither the movable chuck, nor the movable sharpener, nor the oblique tool," and, again, that the claim asked for "was limited further to a movable chuck in combination with a stationary tool." This claim, however, was rejected. Truly, then, it would be carrying the doctrine of estoppel to an unheard-of and extravagant length to hold that an unsound and unsuccessful argument made in the patent office by an applicant's solicitors with respect to a rejected claim should have the effect of imposing a destructive limitation upon the allowed claims. It will be observed that in overruling the primary examiner, and allowing the first and second claims of the patent, the examiners in chief said:

We do not find the sharpening device met by any of the references, and in the combination and arrangement shown, making up the complete machine, we think meritorious invention is evinced. May comes nearest anticipation, as he shows the broad combination of the elements. But in his case the tool carriage is moveable, and has to be run back on a track, partly reversed, and run off on another track at right angles to a grinding stone. Applicant's machine is a great improvement on this, as the stone is brought to the tool by the simple movement of a lever, and no appreciable time is consumed in the operation.

Thus we see that in its final action the patent office held the patentable quality of Cléret's apparatus to lie in the described means for sharpening the cutting tool without any appreciable loss of time. This judgment was in perfect harmony with the view of the applicant as expressed in his specification. In fact, the gist of Cléret's invention consists in the application to the old button lathe, whether in the one form or in the other, of the automatic sharpening device arranged in relation to the oblique cutting tool as described. That the patent office imposed, and the applicant accepted, the limitation upon which the defendants insist, would be a strained conclusion. An estoppel is not to be implied from circumstances of doubtful import. This is a fundamental invention, and, upon well-considered principles, the patentee and his assignees would have the benefit of the doctrine of equivalents, in large measure. Looking at the entire proceedings upon Cléret's application, it cannot, I think, fairly be said that either the patent office, on the one side, or the applicant, on the other side, contemplated a limitation which would render the claims practically valueless, and make the grant of the patent a vain thing. Let a decree in favor of the plaintiff in each case be drawn.