TOWNSEND, District Judge.
This bill in equity alleges infringement of the first claim of patent No. 477,865, granted June 28, 1892, to William 0. Homan, and duly assigned to the complainant. Said claim is as follows:
“(1) In a wick adjuster for central-draft lamps, the combination, with a wick-band, of a drawbar attached thereto; a stem connected at its upper end with the upper end of the said bar, and provided at its lower end with coarse screw threads; a tube having a centrally perforated knurled operating nut located at its upper end, and constructed with internal screw threads corresponding in pitch to the threads of the stem aforesaid; and a rotatable suspension sleeve mounted on the tube below the said nut, and adapted to be removably secured to the lamp fount in which it suspends the said tube,—substantially as described.”
*524 The defenses are denial of patentable invention, in view of the state of the art, and noninfringement. The object of tire alleged invention was to provide a special form of wick-adjusting devices for central-draft lamps, which would combine the advantages of a screw and direct-thrust action in the adjustment of the wick and extinguishment of the light. This was accomplished by a combination of the ordinary wick band with a shank projecting laterally outward, to which was rigidly secured a perpendicular rod or drawbar passing up through the upper surface of the lamp, coupled at its upper end to another, parallel rod or stem, extending into a tube suspended perpendicularly in the lamp; ■ said tube and the lower end of said stem being provided with coarsely-pitched screw threads. At the upper end of said tube was placed a centrally perforated operating nut, and beneath this a rotatable threaded suspension sleeve, which served to suspend said tube and the stem therein. By this combination it was possible either by rotating said operating nut to slowly raise or lower the wick, or to move it quickly, as for lighting or extinguishing the lamp, by simply taking hold of the drawbar, or the connection between it and the stem, and directly raising or lowering it. The coarseness of the pitch of the threads permitted them to operate as idlers within the tube. Every element of this combination was old. iáuch a drawbar was shown in the prior Meyrose and Parker patents. Broadly coupling a drawbar and stem was old, is shown in the prior Woodward, Davis, and Hoerle patents, and is specifically disclaimed. In the prior Miller, Carr, and Atwood patents were shown means for raising or lowering the wick by ratchets or pinions. These patents are further important because they show devices “combining the advantages of a screw and a direct-thrust action in the .adjustment of the wick and extinguishment of the light,” which were the results accomplished by the device of the patent in suit, as stated by the patentee. A screw device for raising or lowering the wick was shown in the prior patent granted to F. R. Rhind, April 19, 1887. It comprised a tube extending into the body of the lamp, and capable of being used as a filler, and provided with exterior spiral ribs, on which a yoke attached to the wick holder operated to raise or lower the wick by means of a rotatable head. The patentee, Rhind, says, as to the pitch of the screw, as follows: “Preferably, the spiral rib is made of a quick pitch, so that slight extent of rotation will impart a considerable up or down movement to the wick.” Patent Ho. 394,465, granted December 11, 1888, to Z. Davis, shows a solid drawbar and stem, and a'screw device passing through a nut like-that of the patent in suit. It describes a construction with the screw nut either at the top or the bottom of the bowl of the lamp. Patent Ho. 435,357, granted August 26, 1890, to H. M. Hoerle, shows-a construction similar to that of Davis, except that in this device the screw thread appears to be sufficiently coarse to permit the quick-thrust operation described in the claim in suit. All the results ascribed to the patented combination are old, and the new construction is due to the assembling together of old elements, “effected without requiring any modification of the parts which was not an obvious one, and within the ordinary skill of the mechanic.” Briggs v. *525 Ice Co., 8 C. C. A. 480, 60 Fed. 87, 89. Counsel for defendant therefore strenuously contends that there was no patentable novelty in the claimed combination, or in the resultant operation. He contends that in the light of the prior art, and of the disclaimer by the patentee, there is nothing more than an aggregation of the old and well-known push devices and the quick pitch screw illustrated by Hoerle and described by Rhind. He further contends that those prior patents which show the result of slow screw and quick thrust by means of a ratchet and pinion would, if later, infringe the patent in suit, and therefore anticipate it, under the familiar rule. Complainant contends, as to these prior patents, that it does not appear they were anything more than mere paper patents, that there is no suggestion that they were capable of successful practical operation, and that in none of them is shown the conception of any combination in which an idler screw tube is so constructed as to provide the advantages of the screw adjustment and direct thrust in one combination. It has not been shown that the prior screw devices were commercially successful, or that they were intended to be so operated as to combine the screw adjustment and quick thrust. But I do not understand that the law necessarily imposes upon a defendant, who relies upon the prior art to limit the scope of a patent, the burden of proving that prior patents were useful, operative, or commercially successful, or that they stated all the undeveloped possibilities of the invention therein disclosed. It is not necessary that the patentee should have conceived the idea of all the uses of which his invention is capable. He is entitled to all the beneficial uses embraced within the scope of his invention. Manufacturing Co. v. Cary, 147 U. S. 635, 13 Sup. Ct. 472; Dixon-Woods Co. v. Pfeifer, 5 C. C. A. 148, 55 Fed. 390; Manufacturing Co. v. Robertson, 23 C. C. A 601, 77 Fed. 985. Hor is the mere fact that a patented device is limited in operation or application, alone sufficient to destroy its relevancy in a consideration of the prior art. The development of new industries, the discovery of new products, the adaptation of old materials to new uses, may suggest improvements upon devices of the prior art, the principles of which are already sufficiently disclosed, although not fully developed, because not demanded by the prior existing conditions. In the application of this doctrine, patents have been held void for improved stamps required by new internal revenue laws; for new adaptations of gate guards for elevated railways; new forms of bicycle bells, pedals, and rubber tires. It is well settled that mere paper patents may negative patentable novelty, provided they sufficiently disclose the principles of the alleged invention, or provided the alleged objections could be obviated by mere mechanical skill. Pickering v. McCullough, 104 U. S. 310. “The very fact that a machine is patented is some evidence of its operativeness, as well as of its utility.” Dashiell v. Grosvenor, 162 U. S. 425, 432, 16 Sup. Ct. 805. When, therefore, a prior patent appears upon its face to be relevant to the consideration of the prior art, I think the later inventor should show either that such device was not useful, or that it did not so disclose the principle of the later patent as to deprive it of its claim of patentable novelty. Com *526 plainant has failed to show that these devices either lacked utility, or were incapable of successful practical operation.
Two illustrative exhibits were produced upon final hearing,— one by complainant, known as the “Rhind Lamp”; the other by defendant, known as the “Hoerle-Davis Lamp.” The Rhind lamp is constructed substantially in accordance with the specifications of the Rhind patent. Its operation is practically identical with that of the patented apparatus, as stated in the specification:
“The wick may be raised and lowered with care and accuracy by simply turning the operating nut, while, when it is desired to lift the wick very quickly, or push it down suddenly, the coupler is taken hold of, and a direct upward or downward thrust given the drawbar and stem, which will at once respond to such movement, owing to the coarseness of the threads,” etc.
The only material difference between the Hoerle-Davis patents and the Rhind lamp is that the screw on the latter is a somewhat quicker pitch than that shown in the Davis patent. I fail to find any inventive conception or patentable novelty in the patented construction or operation. But even if the patent, as limited to the precise construction described and claimed, could be sustained, it is not infringed by defendant. The construction of the defendant’s device is best shown by, a reference to the Davis patent, already considered, and by a comparison of its construction with that of the patent in suit. Each of these constructions has the wick band, the drawbar attached thereto, the operating sleeve by which the screw tube is suspended in the lamp fount, and the tube with the central perforated operating nut located at its upper end. As already stated, the screw of the Davis patent does not have a quick pitch, such as is described and shown in the Rhind specification and drawing. While the defendant’s device does have such a quick-pitch screw, it does not have a stem “provided at its lower end with coarse screw threads,” and a.tube “constructed with internal screw threads corresponding in pitch to the threads of the stem aforesaid.” Nor does it have any coupling connecting the upper end of the stem to the upper end of the drawbar for communicating movement from the operating stem to the drawbar. That the patentee in the claim in suit used the word “connected” in the ordinary sense of fastening by means of an intervening coupler, appears from the associated words, “a stem connected at its upper end with the upper end of said drawbar,” as well as from the specification, drawings, and other claims of said patent describing, illustrating and specifically covering said coupler, and is further shown by another patent taken out on the same day by this patentee, wherein he described, illustrated, and claimed an integral drawbar and stem. In the defendant’s device such a single piece of wire fulfills the functions of drawbar and stem. Defendant’s screw-tube device is like that shown in the Rhind, and illustrated in the Davis, patents. An arm extends laterally from the wick holder, and is provided with a nonrotatable collar or sleeve, so threaded, as to operate in the external threads of the screw-tube. In this connection, I have not overlooked the contention of complainant for the application of the well-settled princi *527 pie that a mere reversal or immaterial change of parts will not avoid a charge of infringement. Société Anonyme Usine J. Cleret v. Rehfuss, 75 Fed. 657; Devlin v. Paynter, 12 C. C. A. 188, 64 Fed. 398. If this patent covered a primary invention, the broad range-permitted to equivalents would embrace the device of defendant. But the only consideration for its grant was a modification of old devices. The patentee chose to confine himself to a claim for a stem connected at its upper end with said bar, and provided at its-lower end with coarse screw threads. The defendant does not use such a stem connected at its upper end with said bar, but a solid bar. In its lamp it has availed itself, as it had a right to do,, of a construction well known in the prior art. The Rhind patent and the illustrative exhibit of the Rhind lamp show substantially the defendant’s construction, except the old and well-known draw-bar. When Homan, in differentiating his improvement from Rhind, Davis, and Hoerle, secured a patent therefor, the state of' the art was such that he could only claim the exact construction which he selected as the embodiment of his improvement, or its-ordinary equivalent. While I do not consider the evidence afforded by dismembering elements of a combination as relevant generally, yet in this case I think it may be material upon the contention of mere immaterial transposition of parts. If the complainant’s stem and drawbar be disconnected at the upper end, the device is inoperative, while, if thus disconnected in defendant’s device, it continues to operate as before. In view of the fact that complainant insisted that one of the essentials to his patent was this connection at the upper end, with which the defendant may dispense, and which, at best, he uses, not as essential to its construction, but as a convenient guide to its operation, I think infringement is. not shown, and therefore a decree may be entered dismissing the bill.