PIANO MOTORS CORPORATION et al. v. MOTOR PLAYER CORPORATION.

(Circuit Court of Appeals, Third Circuit. August 1, 1922.)

No. 2882.

1. Patents ⟨⟩129—No question of validity involved in infringement suit between assignor and assignee.

In a patent infringement suit between assignor and assignee, no question of validity of the patent is involved.

2. Patents ⟨⟩129—Assignor, sued for infringement, can litigate scope.

While the assignor of a patent, sued for its infringement by the assignee, cannot question its validity, he can litigate its scope, and ask for a construction which relieves him from infringement.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. Patents ⊂⊃203—Not unnecessarily construed, so as to make it worthless as between assignor and assignee.

As between assignor and assignee of a patent, courts will not unnecessarily construe it so narrowly as to make it worthless.

4. Patents ⊂⊃129—Evidence attacking validity cannot be introduced by assignor for ostensible purpose of narrowing scope.

An inventor, who has assigned the patent, cannot introduce evidence for the ostensible purpose of so narrowing its scope as to avoid infringement, but which in fact attacks its validity for want of novelty.

5. Patents ⊂⊃314—When prior art not shown, claims merely construed on their face.

In suit for infringement of patent between assignor and assignee, where the prior art was not shown, the court will not attempt to determine the place therein occupied by the invention in suit, but will merely construe its claims on their face.

6. Patents ⊂⊃328—1,320,224, for suction producing apparatus for player pianos, held infringed.

The Garman patent, No. 1,320,224, for a motor-driven suction producing apparatus for a player piano, held infringed by device in which the positions of motor and fan were merely transposed, though it was claimed this resulted in more effectually cooling the motor.

7. Patents ⊂⊃236—Mere reversal of mechanism does not effect departure from invention.

Mere reversal of mechanism, creating no new function and no change in the essential mode of operation, does not effect a departure from the invention.

8. Patents ⊂⊃287—Assignor of patent held personally responsible for infringement by corporation with which he was connected.

An inventor and assignor of a patent, who was one of the three incorporators, the vice president, a director, and the owner of one-third of the stock of a corporation which since its foundation had engaged exclusively in manufacturing and selling infringing devices, was personally responsible for the infringement.

Appeal from the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Suit by the Motor Player Corporation against the Piano Motors Corporation and another. From a decree for plaintiff, defendants appeal. Affirmed.

L. F. H. Betts, John W. Peters, and Edward W. Vaill, all of New York City, and Elmer G. Van Name, of Camden, N. J., for appellants.

Charles Neave, of New York City, Joseph P. Tumulty, of Washington, D. C., J. Bonsall Taylor, of Philadelphia, Pa., Justin W. Macklin, of Cleveland, Ohio, and E. Hayward Fairbanks, of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. This action was brought by the Motor Player Corporation against Piano Motors Corporation and George W. Garman for infringement of Letters Patent No. 1,320,224. The patent was acquired by the Motor Player Corporation through mesne assignments from Garman, the patentee and co-defendant.

The invention of the patent is a motor driven suction producing apparatus for a player piano, adapted to take the place of some-

what similar foot-operated devices commonly used in such instruments. Its purpose is to create a vacuum necessary to actuate the various hammers, expression devices and automatics of the piano mechanism. It is a self-contained unit in which a motor driven fan of several blades is operated. It contains two chambers, one above the other. In the upper chamber the suction producing fan is positioned and in the lower chamber the motor, or power plant, is seated.

In order that an electric motor and fan of the size permitted may produce the requisite suction, it is necessary that they operate at a very high speed. The speed of the fan is from 8,000 to 12,000 revolutions per minute. Normally the noise of a motor and fan running at such speed precludes their use in musical instruments. Garman's problem, therefore, was to preserve the high speed of the motor and fan and eliminate their noise. Noise of this kind comes from two sources—metallic vibrations and pneumatic pulsations. Garman got rid of metallic vibrations by making the device in two shells—a container within which is a casing, the latter housing the mechanism, the walls of the two being spaced apart and kept from contact by muffling or cushioning materials. He dispelled pneumatic pulsations by causing the air to travel through muffled channels before coming out into the open. The result is the elimination of noise to such a degree that it does not disturb the pitch of musical notes.

The trade-name given the device is "Electora."

The defendants manufactured and sold a suction producing apparatus which the plaintiff contended, and the trial court found, is a mere reversal of the parts of the Garman device, the motor being moved from the lower to the upper chamber and the fan from the upper to the lower chamber, with the container and casing similarly spaced and cushioned.

The defendants gave their device the trade name of "Motora."

As the controversy is between the assignee and assignor of the patent, the court gave the patent a construction which brought the defendants' device within its claims, and, finding infringement, entered an interlocutory decree for an injunction and an accounting. The defendants appealed.

[1-4] In reviewing this case it may first be noted that because of the relation of the parties as assignee and assignor there is involved no question of validity of the patent. It may next be noted that while the assignor of a patent can not question its validity he can litigate its scope and ask for a construction which relieves him from infringement. Smith v. Ridgely, 103 Fed. 875, 876, 43 C. C. A. 365. In doing this there inevitably arises a question of the breadth of the claims, and a question of the principle by which courts will be controlled in determining the same. The defendants admit that—

"As between assignor and assignee of a patent the courts will give a liberal rather than a narrow construction to the patent assigned."

Keeping in mind the transaction of assignment, courts will not, unnecessarily, construe the patent so narrowly as to make it worthless, Leader Plow Co. v. Bridgewater Plow Co., 237 Fed. 376, 150 C. C.

A. 390; nor will they permit an inventor, who has assigned the patent for his invention, to introduce evidence for the ostensible purpose of so narrowing its scope as to avoid infringement, but which in fact attacks its validity for want of novelty, Alvin Mfg. Co. v. Scharling (C. C.) 100 Fed. 87.

While these general principles are applicable here, they are not the only guide to a proper construction, because there is in this case an unusual circumstance which bears directly on the scope of the claims. The circumstance is this:

In 1918 Willard A. Warren and George W. Garman (the latter the patentee of the patent in suit) made and put on the market under the trade-name of "Rotora" a small number of suction producing devices similar in most mechanical features to the device of the patent and differing mainly in the arrangement of sound-deadening means. Later in that year they filed a joint application for a patent. Consideration of the application was suspended by the Patent Office pending a correction in the oath. On March 29, 1919—the joint application still pending—Garman as sole inventor signed the application for the patent in suit. On the same day he assigned it to a predecessor of the plaintiff in the title. Later, the assignee filed the application.

The application, as filed, stated that the invention was an improvement upon the invention covered by the joint application of Warren and Garman then pending, the specification disclosing an apparatus in considerable detail and the claims limiting the invention to "suction producing apparatus of the class recited."

At this juncture Warren disappeared, the defect in the oath was never cured, and the joint application of Warren and Garman was abandoned. The attorneys for the assignee of the Garman application were then granted leave to strike out certain clauses of the application. These were the clauses which limited the invention to an improvement upon the Warren and Garman apparatus. With the application for a patent for the Warren and Garman joint invention abandoned and out of the way, and the application for the patent in suit amended by striking out all reference to the invention of the Warren and Garman joint application, the plaintiff maintains there is no art prior to the patent in suit and accordingly claims for the patent the broadest scope possible. The defendants maintain that the patent covers only what was embraced in the application before it was amended and ask for a construction so narrow as to leave little, if any, invention in the patented device.

[5] As the validity of the patent could not, in this case, come in issue, the prior art (with the possible exception of the Warren and Garman device) was not given in evidence. Therefore, on this inadequate record it is impossible to tell just what place in the art the invention of the patent occupies. It is probable that somewhere between the extremes claimed by the parties is the patent's true place. We shall not, in the dearth of evidence on the art, try to find it. We shall do nothing more than construe the claims of the patent on their face, having regard to the relation of the parties as assignee and assignor, and endeavoring to preserve to the assignee all that was

assigned to him, and nothing more. As to what evidence in a case between other parties might show, we do not commit ourselves. We simply hold that on the evidence before us the patent is for a detail construction of a known class of suction producing devices, having, as every invention has, some range of equivalents. This construction is sufficient to meet the issue of infringement raised in this case. The question, therefore, is whether the claims in their details read on the defendants' device.

[6, 7] In making their device the defendants reversed the parts of the device of the patent; in other words, they simply turned the structure upside down. Detail by detail, element by element, function by function of the apparatus of the patent can be traced in the apparatus of the defendants, even by one unskilled in the art. The reproduction in reverse order was made with singular fidelity to the disclosures of the patent. If this were all, the case would end here, for mere reversal of mechanism, creating no new function and no change in the essential mode of operation, does not effect a departure from the invention. Though differing in appearance, it is still the same thing. Sociéte Anonyme Usine J. Cléret v. Rehfuss (C. C.) 75 Fed. 657, 659. But in the transposition of parts the motor was moved from the lower chamber of the patented device to the upper chamber of the defendants' device. In this change of position of the power plant, the defendants, as we understand them, do not urge a real difference in the functioning of the mechanism, for, obviously, the motor functions above just as it functions below and the fan functions below just as it functions above, but in thus adopting this substantial element of the invention and placing it in a different position there to perform the same function, the defendants confidently claim an advantage over the arrangement of the patent sufficient to take their device out of the claims of the patent. This advantage is that cool air coming into the upper chamber directly upon the heat generating motor tends to prevent overheating of the device, whereas in the device of the patent the air coming into the upper chamber is more or less heated by the baffle of the fan before it descends upon the motor in the lower chamber and therefore does not cool it as effectually. To sustain this position the defendants introduced evidence that, according to tests, the temperature is higher in the lower chamber of each device and that it is 38 degrees less in the defendants' device than in the device of the patent. Conceding this difference in temperature to be due to the difference in position of the motor in the two apparatus, though this evidence of temperature is controverted by the plaintiff, there is no evidence that in the use of such devices there is a problem of overheating. Nor is there evidence that the device of the patent overheats, or that otherwise the motor arrangement in the defendants' device overcomes a defect in the device of the patent.

Having appropriated the substance of the invention of the patent and having employed it without changing its function or essential mode of operation, we are of opinion that the Piano Motors Corpora-

tion, in manufacturing and selling its apparatus, has infringed claims 1, 4 and 5 of the patent.

[8] As to infringement by Garman, the personal defendant, it appears that Garman, the inventor and assignor of the patent in suit, was one of three incorporators, the vice president, a director and the owner of one-third of the stock of the defendant corporation—a corporation which has since its foundation engaged exclusively in the business of manufacturing and selling the infringing devices. On authority of Lamb Knit Goods Co. v. Lamb Glove & Mitten Co., 120 Fed. 267, 56 C. C. A. 547, we hold Garman responsible with the corporation for infringement.

The decree below is affirmed.