## UNIVERSAL GYPSUM & LIME CO. v. HAGGERTY et al.

District Court, W. D. New York. April 20, 1927.

**1. Patents ⬤=297(1)—Preliminary injunction may be granted against infringement by patentee though patent has not been adjudicated.**

The rule that a preliminary injunction will not be granted against infringement of a patent, validity of which has not been adjudicated or acquiesced in by the public, does not apply when the defendant is the patentee who has assigned the patent for valuable consideration, or a corporation organized and controlled by him and associates, knowing, or having reason to know, of the assignment.

**2. Patents ⬤=157(2)—Patent must be liberally construed in assignee's suit against assignor for infringement.**

In a suit for infringement by an assignee against the assignor, the patent is entitled to a liberal construction.

**3. Patents ⬤=328—Haggerty patent, 1,500,452, for improvement in plaster wall board, held valid and infringed.**

Haggerty patent, No. 1,500,452, for improvement in plaster wall board, *held* valid and infringed, on motion for preliminary injunction.

In Equity. Suit by the Universal Gypsum & Lime Company against Joseph F. Haggerty, Clarence E. Williams, and the National Gypsum Company. On motion for preliminary injunction. Granted.

J. William Ellis, of Buffalo, N. Y., Charles A. Brown and Leslie W. Fricke, both

of Chicago, Ill., and S. Fay Carr, of Buffalo, N. Y., for plaintiff.

Elmer E. Finck, of Buffalo, N. Y., Pennie, Davis, Marvin & Edmonds, of New York City (Morris D. Jackson and Arba B. Marvin, both of New York City, of counsel), for defendants.

HAZEL, District Judge. This is a motion for an injunction pendente lite against the defendants in an equity suit charging infringement of patent No. 1,500,452, granted July 8, 1924, to Joseph F. Haggerty, and assigned to the Universal Gypsum Company, now known as the Universal Gypsum & Lime Company, the plaintiff, for improvements in plaster wall board, and for discovery of improvements made in the assigned invention, by the patentee, and requiring an assignment of all patent applications and patents covering improvements. The defendant Haggerty has not been served with process. It will suffice to set forth claims 1 and 8:

"1. A wall board consisting mainly of gypsum and having a paper liner, cooked starch being incorporated with the gypsum, to insure secure adhesion of said paper liner."

"8. A wall board consisting mainly of gypsum and having a paper liner, cooked carbohydrate being incorporated with the gypsum to insure secure adhesion of the paper liner, fiber being thoroughly distributed throughout the carbohydrate to strengthen the board."

[1] The injunction is sought on the ground of estoppel to deny the validity of the patent and its utility and novelty because of its assignment by Haggerty to plaintiff, and its subsequent infringement by him and his privies. It is urged, in opposition, that, since there has been no adjudication sustaining the patent, or judicial construction of the claims, or acquiescence by the public, the injunction should not issue. This rule, however, has no application to a state of facts showing that a patentee transferred his patent for a valuable consideration, and afterwards, in co-operation and association with others who had knowledge of the assignment, commits acts of infringement. Continental Wire Fence Co. v. Pendergast (C. C.) 126 F. 381; Mellor v. Carroll (C. C.) 141 F. 992. If, therefore, the defendants Williams and the National Gypsum Company became associated with the patentee, knowing or having reason to know, that the patented invention had been sold to plaintiff, and they jointly or severally co-operated with him to manufacture wall board under

21 F.(2d)—35

the described process, and are so engaged, then they may be restrained from infringements, even though many of the stockholders of the corporation were unaware of the antecedant history of the patent and its sale to plaintiff under an agreement that future improvements or inventions should be assigned. Moreover, if the corporation is dominated by the patentee and persons associated with him, it is deemed to have been in privity with them, and may equally be estopped. In such a situation it amounts to more than a mere co-operation with the estopped assignor. Johnson Furnace & Engineering Co. v. Western Furnace Co. (C. C. A.) 178 F. 819.

What are the circumstances warranting the application of the doctrine of estoppel? It is evidenced that the inventor, Haggerty, was a promoter in the manufacture of wall board, and, at the time he assigned his invention and patent, and prior thereto, was familiar with the ordinary processes by which gypsum board, as a substitute for lath and plaster, was made. He appreciated the difficulties in prior art structures as to the amount of water used in the mixture to secure sufficient adhesion of paper liners placed on both sides of the gypsum core and prevent peeling off. He designed to remedy the difficulty by making the paper liners stick better to the board, and, in the attainment of his object, he used, as the specification and claims in controversy show, a certain quantity of carbohydrate material, or soluble starch, in the core mixture, and made the board lighter by using a relatively large amount of water in the mixture. He did not limit his invention exclusively to the use of starch, and emphasizes that a suitable carbohydrate material may be used in the core, "as, for instance, starch or the like," in practicing the invention. He stated that use of sawdust can be omitted, while the paper liner could be made either of wood fiber or waste paper beaten to a pulp to form sheets. In short, he brought about a wall board that could be nailed without chipping, and which had adhesive qualities between the paper and the gypsum core.

The patentee originally organized the Gypsolite Company to manufacture wall board embodying his invention, but, on May 14, 1923, as the moving affidavits show, sold his interest in the company, together with his patent, to plaintiff, for a valuable consideration, and also agreed to assign any improvements thereafter made or invented by him. Defendant Williams took an active part in the organization of plaintiff, becom-

ing a director, vice president and secretary, at various times, and continued as director from December 11, 1922, to August 27, 1925, ceasing only a few days before the defendant corporation was organized. On July 13, 1925, Haggerty applied for a patent, serial No. 43,407, on a claimed improvement in the wall board, and immediately began the organization of the National Gypsum Company, assisted by defendant Williams, who admits his co-operation and association with Haggerty in the formation of the new company and management in its business of manufacturing wall board and gypsum products. From the time of organization of the new company, both Haggerty and Williams, who own the voting stock, have been the controlling influence in the management of its affairs, the former being president and director, and the latter vice president, treasurer, and a director; and, in the conduct of the enterprise, they gave employment to former responsible employees of plaintiff, who were familiar with the wall board business and operations. If, then, wall board is manufactured by the defendant corporation in violation of the assignment of the patent, it cannot be ruled that it was not co-operating or associating with Haggerty and Williams, and the corporation and Williams are both subject to estoppel, if the product infringes the assigned patent. The latter's denial that he did not participate in the sale or assignment by Haggerty to plaintiff is an insufficient denial of scienter. But defendants, in opposition, say that the patentee was not barred from co-operating with others to engage in a separate business. This, however, is beside the point. Then it is further said that defendants' article is made differently from the patented process, in that newspaper pulp is utilized to serve as a binder, omitting the use of sawdust, with the result that the board is lighter and stronger; and, furthermore, in making the wall board, dextrin is added to the gypsum, not to obtain adhesion of the paper liners to the gypsum core, as in plaintiff's patent, but solely to prevent the soft gypsum from protruding or overlapping the edges, in manufacture, or exposing the edge of the board. I am disinclined to accept this view at this time. I do not think the use of dextrin in defendants' admixture patentably differentiates the process in suit or results in a materially different article. In both processes gypsum, carbohydrate material, water, and paper liners are necessary to make the board. Dextrin gums or sticks the paper liner to the core, or in an important way contributes thereto. In several of the claims in issue, reference is made to cooked carbohydrate or cooked starch to secure the desired adhesion, and, having in mind the use of dextrin by defendants, and its preparation, I think that its physical properties are not unlike cooked starch or soluble starch, and that it constitutes a carbohydrate within the terms of the patent.

[2] Defendants draw attention to prior patents, but they cannot be considered to invalidate the claims. Alvin Mfg. Co. v. Scharling (C. C.) 100 F. 87. Some of them do not alone bear upon the scope of the Haggerty patent, but seem to relate to anticipation and novelty. As between plaintiff and defendants, in my estimation, the assigned patent is entitled to a liberal construction instead of one that is narrow. Piano Motors Corp. v. Motor Players Corp. (C. C. A.) 282 F. 435; U. S. Frumentum v. Lauhoff (C. C. A.) 216 F. 610, and cases cited.

[3] It is true that the scope of plaintiff's patent is open to construction, but the claims are broad enough, on the showing before me, to include defendants' adaptation by which a similar structure is produced. In meeting defendants' contention, plaintiff asserts that none of the prior patents limit the scope of the claims, since the Haggerty patent teaches how a strong, lightweight gypsum wall board may be produced by using a relatively larger amount of water in the core mixture than is shown in the prior art; and, moreover, in overcoming known difficulties in securing adhesion of the liners to the core, the patent progressed the art. It may be conceded that dextrin in the batch and certain fibrous material used was an old expedient, but, and, defendant corporation has gone farther, and, in making a lighter and stronger board, has taken the elements of the claims in combination to achieve the result. Its modification and use of dextrin may produce a more perfect board than the conception of the patentee, but, even though this be a correct estimate, weight cannot be given it on this application. If defendant's operation were new, or if doubt existed as to infringement, then an injunction pendente lite would not be grantable, but the whole question apparently rests upon whether an admixture of dextrin evaded the scope of the claims. In the Armstrong patent, cited by defendants, a small quantity of dextrin was added to the fibrous material in a paper lined gypsum board, but the dextrin was used as a hastener to the setting and not for adhering the paper liner to the core. I discover nothing to require a strict construction of plaintiff's patent by this citation. Defendants'

wall board, as I see it, is not different from plaintiff's either as to strength, weight, breakage, or any other advantage mentioned in the assigned patent; and there is nothing in the additional patents cited which is thought to restrict the claims in controversy to the adaptation of soluble starch as distinguished from the use of a dextrin preparation, which, in its use, I find, imparts adhesiveness to the paper liner.

If I am correct in construing the claims in issue, as indicated, there is no doubt as to their infringement of the assigned patent, and it follows that a case for injunction is fairly made out against the defendants served with process, but, since it is urged that irreparable injury to defendant corporation, which is financially sound, may follow if its manufacture of wall board is enjoined, and to guard against error, I will withhold the injunction upon defendants Williams and National Gypsum Company giving an adequate bond, the amount to be determined on entry of the order, to secure plaintiff for damages sustained, and loss of profits, if any, that may be decreed herein, or, in the alternative, the injunction may issue. So ordered.