LIBBEY GLASS MFG. CO. v. ALBERT PICK CO., Inc.

ALBERT PICK CO., Inc., v. LIBBEY GLASS MFG. CO.

Nos. 4788, 4789.

Circuit Court of Appeals, Seventh Circuit.

Feb. 1, 1933.

Rehearing Denied March 31, 1933.

Otto Raymond Barnett, Percival H. Truman, and Lawrence T. Barnett, all of Chicago, Ill., for Libbey Glass Mfg. Co.

Fred Gerlach, of Chicago, Ill. (Loucks, Eckert & Peterson, of Chicago, Ill., of counsel), for Albert Pick Co.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge (after stating the facts as above).

The patent in suit, issued August 18, 1914, to Hugo Pick, makes one claim, and it is as follows:

"As an article of manufacture, a drinking glass having a suitable wall projecting upwardly from a base portion and terminating in an integral fragile rim of the same general contour and constituting a continuation of said wall, the wall being formed with a shallow bulge arranged below the rim to leave the usual mouth-engaging portion, but contiguous thereto, and projecting beyond the normal plane of the wall, the bulge being of relatively narrow width and being curved outwardly to present concavo-convex portions terminating in opposite directions vertically in gradual, reverse curvatures, merging into adjoining portions of the wall above and below the bulge to present uninterrupted smooth exterior and interior surfaces devoid of sharp lines or angles, and said bulge being arranged with reference to the mouth of the glass to insure separation of its fragile rim from similar rims of other glasses when grasped in group, to preserve said rim against fracture, substantially as described."

The District Court made findings of fact; and a perusal of the record convinces us that

they are fairly supported by a preponderance of all the evidence.

Prior to 1925 Libbey was extensively engaged in the manufacture and sale of various kinds of drinking glasses, including those provided with a beaded edge which were sold by it under the name "Safedge." At that time, and continuously to the present time, Libbey and Pick have been active competitors throughout the United States in the sale of drinking glasses.

Prior to 1925 Pick sold a large line of drinking glasses throughout the United States, including tumblers and goblets manufactured and sold by Pick under the patent in suit, Hugo Pick being the patentee of that patent. This line of patent drinking glasses was catalogued and sold by Pick under the trade-name "Nonik," and a very large sale of those glasses had been developed.

On or about January 2, 1925, Pick sold the patent to Libbey, and at or very near the same time the parties entered into a contract in which no reference in terms was made to the patent in suit. Among other things, however, it provided:

(1) Pick would purchase its entire requirements of "Nonik" glassware from Libbey until August 18, 1931 (the date of the expiration of the Pick patent), with an option on Pick's part of extending the agreement for a further five years.

(2) Libbey agreed that all such ware sold to Pick would be billed at a price of 10 per cent. less than Libbey's best price to its most favored customer for like glassware, with a provision that, in case Libbey should fail or refuse for any reason to fill any of Pick's orders, Pick might have the same filled elsewhere so long as Libbey's failure or refusal continued.

(3) Libbey also granted to Pick a license to sell the unpatented "Safedge" glassware made by Libbey, and an exclusive license to sell "Safedge" and what was then known to the trade as "Nonik" glassware to certain described trade in Indiana, Illinois, Michigan, and Wisconsin, with authority to protect such rights by bringing suit for patent infringement in Libbey's name.

The "Nonik" glasses were well known to the trade, and were sold by Pick under that name and under the patent herein sued on, such trade-name relating solely to glass tumblers and goblets having an annular ridge projecting outside the tumbler, as shown in the drawing of the patent.

In 1926 Pick introduced to the trade, catalogued, and sold tumblers and goblets under the name of "Dur-Nok," being the ware herein complained of as infringing the patent in suit. The "Dur-Nok" glassware is designed to and does protect the rim of thin glass tumblers from nicking, as was claimed for the glasses covered by the patent in suit; but the "Dur-Nok" glasses were constructed with an annular groove projecting into the glass, instead of with a bulge extending outwardly as covered by the Pick patent. The "Dur-Nok" ware sold by Pick was not manufactured by Libbey, and was not contemplated in the contract heretofore referred to.

The patent in suit exhibits a substantially straight-sided drinking tumbler with an annular convex bulge of relatively narrow width projecting beyond the normal plane of the wall, and merging above and below by gradual reverse curvatures into adjoining portions of the side wall.

It is contended by Libbey that a reasonable construction of the claim of the patent in suit must include within the range of equivalents the articles of ware complained of which are manufactured and sold by Pick.

Inasmuch as this suit is between the assignor and the assignee of a patent, there are certain well-defined rules by which we are governed in determining the matters before us.

■ The assignor is estopped from denying the validity of the patent. Alvin Mfg. Co. v. Scharling (C. C.) 100 F. 87. This rule, however, does not prevent assignor from denying infringement. Westinghouse Electric & Mfg. Co. v. Formica Insulation Co., 266 U. S. 342, 45 S. Ct. 117, 69 L. Ed. 316.

■ On an issue of infringement between assignor and assignee, the courts will give a liberal, rather than a narrow, construction to the patent assigned, if necessary to preserve its value. United States Frumentum Co. v. Lauhoff (C. C. A.) 216 F. 610; Leader Plow Co. v. Bridgewater Plow Co. (C. C. A.) 237 F. 376; Piano Motors Corp. v. Motor Player-Corp. (C. C. A.) 282 F. 435; Universal Gypsum & Lime Co. v. Haggerty (D. C.) 21 F. (2d) 544.

■ The prior state of the art may be used by an assignor to construe and narrow the claims of the patent, but not to destroy the patent and defeat the grant. Westinghouse Electric & Mfg. Co. v. Formica Insulation Co., supra.

The file wrapper in this case discloses the fact that patentee was not successful with his original claims, nor on his first and second

amendments thereof. The specifications and the original claims contemplated the use of patentee's alleged discovery in the manufacture of any of the numerous forms of drinking glasses generally used. The Examiner rejected those claims on the ground that tumblers designed with annular bulge, presenting a double convex projection on the outer surface contiguous to the rim, were well known in the art. He cited Buttler 29,813 (1898); Helmer 38,248 (1906); and Pick 43,059 (1912).

Thereupon all pending claims were canceled, and two claims were substituted which specified an approximately straight cylindrical wall projecting upwardly from its base. These were also rejected on the references already in the record. The claims were canceled and another substituted which specified an approximately cylindrical wall projecting upwardly from its base. This claim was likewise rejected and canceled, and the claim now before us was substituted and granted.

██ From the history thus given, it is quite obvious that the patent is one of very narrow scope, and, while that scope will be given all liberal construction possible in Libbey's favor, it will not be enlarged to include anything which was denied patentee by the Examiner. It is true that in patentee's application he states that his object is to provide a drinking glass of any of the numerous forms generally used. The presence of that broad statement is due to the fact that patentee failed to amend it to consist with the claim which was finally allowed. He cannot go beyond what he has claimed and insist that his patent covers something not claimed merely because it is to be found in the descriptive part of the specification. Lehigh Valley Railroad Co. v. Mellon, 104 U. S. 112, 26 L. Ed. 639. The claim in the patent is the measure of the invention, and, while the specification may be referred to to explain any ambiguity in the claim, it cannot be referred to for the purpose of expanding or changing the claim. National Enameling & Stamping Co. v. New England Enameling Co. (C. C. A.) 151 F. 19; Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 24 L. Ed. 344; McClain v. Ortmayer, 141 U. S. 419, 12 S. Ct. 76, 35 L. Ed. 800.

██ It is quite apparent from the rejected claims that the Examiner was not willing to approve any claim which applied to all of the numerous forms of drinking glasses in general use, and did not do so, because as to most of those forms patentee's original claims, and the substituted claims which were rejected, were old in the art. For those reasons the present claim was so limited as to describe and specify the constituents of a straight-side tumbler with an annular convex bulge joined above and below to wall portions which are in continuation of each other, and in which the edge of the rim is protected by that bulge and without constriction in the rim itself.

Eliminating the annular groove, which is the chief characteristic of the "Dur-Nok" products, no one of the articles complained of can be fairly said to infringe the patent in suit, for each is very much older in the art than is the "Nonik" product, and we fail to see how the insertion of the groove in those various products can in any manner of form or effect be reasonably claimed to constitute an infringement of the patent in suit.

It is contended by appellant that the prior art tumblers which have been referred to have not been established. This cause, upon the bill of complaint, was submitted by agreement of counsel upon the affidavits and exhibits in evidence. Appellant failed to challenge the statements in those affidavits; and exhibits of the prior art in the form of designs, applications, specifications, and claims were received in evidence without objection. Under the circumstances, we think appellee had a right to rely upon the acceptance of that testimony, and we hold that the state of the art was sufficiently established.

██ The issues raised by Pick's counterclaim are based on alleged violations of the agreement of January, 1925. It is charged that Libbey violated that contract by not allowing Pick the agreed preferential discount of 10 per cent. below the lowest price charged any other customer for the same goods. A perusal of the record discloses that in all such cases complained of such sales were made by mutual consent of Pick and Libbey, or upon an agreed flat rate relative to which Pick had waived its preferential discount; or were special sales in which Pick by its conduct, with full knowledge of the facts, had acquiesced; or were instances wherein allowances were made for advertising and like matters, approved by custom of the trade and similar in kind to allowances made by Libbey to Pick. Our conclusion in respect to this part of the counterclaim is somewhat strengthened by an affidavit filed in this cause on behalf of Libbey since argument was had in this court.

The affidavit alleges that on July 13, 1931, the United States District Court for the Northern District of Illinois, Eastern Divi-

sion, appointed a receiver for Albert Pick & Co.; that on said date Pick was indebted to Libbey for glassware sold and delivered to Pick in the sum of $6,905.62, which claim was thereafter filed with said receiver and by the receiver was referred to a special master; that said claim was neither contested nor denied by Pick, but was allowed by the master and reported as a valid claim; and that Libbey received from the receiver as a first and final dividend in payment of said claim the sum of $451.77. Pick has filed no reply to this affidavit.

It is further charged in the counterclaim that Libbey violated the agreement by selling "Nonik" and "Safedge" glassware within the territory in which Pick was granted exclusive rights. A consideration of the evidence bearing on that subject convinces us that this charge was not sustained.

The fact that the counterclaim was not filed until two and one-half years after the bill was filed, and after the evidence had been heard and concluded on the issues presented by the bill, at which time the court had intimated that infringement had been established, is quite persuasive of the fact that the substance of the counterclaim is a matter of afterthought rather than of merit.

Decree affirmed.